1   BARRY J. PORTMAN
    Federal Public Defender
2   DANIEL P. BLANK
    Assistant Federal Public Defender
3   450 Golden Gate Avenue
    San Francisco, CA  94102
4   Telephone:  (415) 436-7700

5   Counsel for Defendant HARDEMAN

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,                )   No. CR 10-0859 RS
                                             )
12                      Plaintiff,           )   MOTION TO DISMISS COUNT ONE
                                             )   OF THE INDICTMENT UNDER THE
13              v.                           )   FOREIGN COMMERCE CLAUSE
                                             )
14  GARY HARDEMAN,                           )
                                             )   Honorable Richard Seeborg
15                      Defendant.           )   June 7, 2011
                                             )   2:30 p.m.
    ─────────────────────────────────────   )

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   PERTINENT CONSTITUTIONAL AND STATUTORY
     PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Commerce Clause, U.S. Const. Art. I, § 8, Cl. 3 . . . . . . . . . . . . . . . . . 1

     B.   Transportation of Minors, 18 U.S.C. § 2423 . . . . . . . . . . . . . . . . . . . . 4

II.  NON-COMMERCIAL PRONG OF § 2423(c) VIOLATES
     COMMERCE CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   First Two Categories Plainly Do Not Apply to § 2423(c) . . . . . . . . . . 7

     B.   Non-Commercial Prong of § 2423(c) Exceeds Scope of
          Third Category . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.   *Raich* and *Morrison* on the Third Commerce Clause
               Category . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          2.   *Clark* and Other Cases Apply *Raich* to § 2423(c) . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arave v. Creech*,
    507 U.S. 463 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Board of Trustees v. United States*,
    289 U.S. 48 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Caminetti v. United States*,
    242 U.S. 470 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

*Gonzales v. Raich*,
    545 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*Japan Line v. Los Angeles*,
    441 U.S. 434 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Marbury v. Madison*,
    1 Cranch 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*United States v. Alderman*,
    565 F.3d 641 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*United States v. Bianchi*,
    386 Fed.Appx. 156, 162 (3d Cir. July 2, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*United States v. Bredimus*,
    352 F.3d 200 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 8

*United States v. Clark*,
    315 F. Supp. 2d 1127 (W.D. Wash. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*United States v. Clark*,
    435 F.3d 1100 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*United States v. Cummings*,
    281 F.3d 1046 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 8

*United States v. Gamache*,
    156 F.3d 1 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*United States v. Lopez*,
    514 U.S. 549 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*United States v. Martinez*,
    599 F. Supp. 2d 784 (W.D. Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 13, 14, 15

*United States v. Morrison*,
    529 U.S. 598 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Pendleton*,
    2009 WL 330965 (D.Del. Feb. 11, 2009)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Wickard v. Filburn*,
    317 U.S. 111 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 15

**U.S. CONSTITUTIONAL AMENDMENTS AND FEDERAL STATUTES**

U.S. Const. art I, § 8, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 4, 15

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

18 U.S.C. § 1591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

18 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

18 U.S.C. § 2242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

18 U.S.C. § 2243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

18 U.S.C. § 2246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

18 U.S.C. § 2423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Prosecutorial Remedies and Other Tools to End the Exploitation of
    Children Today Act of 2003 ("PROTECT Act"),
    Pub.L. No. 108-21, 117 Stat 650 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 14

**MISCELLANEOUS**

Anthony J. Colangelo, The Foreign Commerce Clause,
    96 Va. L. Rev. 949, 953 (2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8, 15

J. Bentham, Anarchical Fallacies, in 2 Works of Jeremy Bentham 501 (1843)  . . . . . . . 14

Jeff Christensen, Notes & Comments, Congressional Power to Regulate
    Noncommercial Activity Overseas: Interstate Commerce Clause
    Precedent Indicates Constitutional Limitations on Foreign Commerce
    Clause Authority, Wash. L. Rev. 621, 640 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**ARGUMENT**

As an issue of first impression, the Court should dismiss Count One of the indictment against Defendant Gary Hardeman, alleging illicit non-commercial sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c), as charging an offense that exceeds the regulatory authority of Congress under the "outward looking" aspect of the Foreign Commerce Clause.  In recently upholding the constitutionality of the related offense of illicit *commercial* sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c), the Ninth Circuit strongly suggested that the *non-commercial* prong of § 2423(c) at issue here would be unconstitutional.  *See United States v. Clark,* 435 F.3d 1100, 1110 n.16, 114-15 (9th Cir. 2006).  The constitutionality of that non-commercial prong of § 2423(c) is now squarely before this Court.  For the reasons discussed below, the Court should hold that it violates the Foreign Commerce Clause.

**I.    PERTINENT CONSTITUTIONAL AND STATUTORY PROVISIONS**

The Supreme Court has made clear that "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution."  *United States v. Morrison,* 529 U.S. 598, 607 (2000) (citing *Marbury v. Madison,* 1 Cranch 137 (1803) (Marshall, C.J.) ("The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written.")).  The question presented by this motion is whether the pertinent provision of the charged criminal statute 18 U.S.C. § 2423(c), proscribing illicit non-commercial sexual conduct in foreign places, exceeds the authority of the Foreign Commerce Clause.  Answering this question requires a brief review of both the Commerce Clause and 18 U.S.C. § 2423.

**A.    Commerce Clause, U.S. Const. Art. I, § 8, Cl. 3**

The Constitution provides that "The Congress shall have Power . . .  To regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes."  U.S. Const. art I, § 8, cl. 3.  There is a long history to the interpretation of the "Interstate" Commerce Clause, with the Supreme Court recently explaining that "even under our modern, expansive interpretation of the Commerce Clause, Congress' regulatory authority is not without effective bounds."  *Morrison,* 529

U.S. at 608 (citing *United States v. Lopez,* 514 U.S. 549, 557 (1995)).  Specifically, modern Commerce Clause jurisprudence has identified three broad categories of activity that Congress may regulate or protect under its interstate commerce power:  1) "'the use of the channels of interstate commerce'"; 2) "'the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities'"; and 3) "'those activities having a substantial relation to interstate commerce, . . . , i.e., those activities that substantially affect interstate commerce.'"  *Id.* at 609 (quoting *Lopez,* 514 U.S. at 558-59).  Regulation of interstate commerce beyond those categories is unconstitutional.

Along these lines, the Supreme Court in *Morrison* struck a key section of the Violence Against Women Act of 1994, proscribing any "crime of violence motivated by gender," as exceeding Congress' authority under the Interstate Commerce Clause.  *See id.* at 605-06, 617-18.  There was no contention that the statute fell within either of the first two categories of Commerce Clause regulation.  *Id.* at 609.  Instead, the contention was that, within the third category, the statute was "a regulation of activity that substantially affects interstate commerce."  *Id.*  Along these lines, Congress made a finding in support of the statute "that gender-motivated violence affects interstate commerce 'by deterring potential victims from traveling interstate, from engaging in employment in interstate business, and from transacting with business, and in places involved in interstate commerce; . . . by diminishing national productivity, increasing medical and other costs, and decreasing the supply of and the demand for interstate product.'"  *Id.* at 615 (citation omitted).  However, the Supreme Court in *Morrison* expressly "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."  *Id.* at 617.  In doing so, the Supreme Court relied heavily on its analysis of the third category in *Lopez,* in which it had "held that the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), which made it a federal crime to knowingly possess a firearm in a school zone, exceeded Congress' authority under the Commerce Clause."  *Id.* at 609 (citing *Lopez,* 514 U.S. at 551).

By contrast, jurisprudence regarding the permissible categories of regulation under the Foreign Commerce Clause is much sparser.  *See, e.g., Clark,* 435 F.3d at 1114 (noting the "sparsely charted waters" of the Foreign Commerce Clause).  What little analysis exists has emphasized that it is in some ways broader than that under the Interstate Commerce Clause, but in some ways narrower.  *See id.* at 1116 (viewing "the Foreign Commerce Clause independently from its domestic brethren.").  For example, on one hand, due to the exclusive authority of the federal government over foreign relations, and the absence of federalism concerns that are often critical to the analysis of the Interstate Commerce Clause, cases involving the regulation of the effects of foreign commerce on the United States have emphasized the broad authority of Congress to regulate under the Foreign Commerce Clause.  *See. e.g., Japan Line v. Los Angeles,* 441 U.S. 434, 448 (1979) (explaining, in decision striking state property tax applied to Japanese cargo containers shipped into California, that "[a]lthough the Constitution, Art. I, § 8, cl. 3, grants Congress power to regulate commerce 'with foreign Nations' and 'among the several States' in parallel phrases, there is evidence that the Founders intended the scope of the foreign commerce power to be the greater" (footnote omitted)); *see also Board of Trustees v. United States,* 289 U.S. 48, 56-57 (1933) (holding that the power of Congress to determine what articles may be imported into the United States, and the terms for their importation, "is exclusive and plenary").  This aspect of commerce "with foreign Nations" has been referred to as the "inward looking" Foreign Commerce Clause.  *See, e.g.,* Anthony J. Colangelo, The Foreign Commerce Clause, 96 Va. L. Rev. 949,  953 (2010).

On the other hand, these justifications for greater regulatory authority do not apply when as here the issue is instead the effect of foreign commerce on other nations, particularly as to conduct wholly occurring within the borders of a separate sovereign country–what has been referred to as the "outward looking" Foreign Commerce Clause.  *See id.* at 953-54 ("When Congress exercises its inward-looking foreign commerce power to regulate inside U.S. territory–that is, inside the territories of the several U.S. states–Congress's regulatory authority can be fairly robust, and in some respects even more robust than its authority to regulate under the Interstate Commerce Clause.

This is because the foreign commerce power implicates foreign affairs and thus more easily overrides state sovereignty.  But when Congress exercises its outward-looking foreign commerce power to regulate outside U.S. territory–and inside the territories of foreign nations–Congress's regulatory powers are geographically circumscribed, and are in some respects weaker than its powers to regulate domestically under either the Interstate or Foreign Commerce Clause.").  Thus, there is some incongruity as to the scope of regulatory authority under the Foreign Commerce Clause, as opposed to the Interstate Commerce Clause.  *See, e.g., Clark,* 435 F.3d at 1111 (noting that "no definitive view emerges regarding the relationship among the three subclauses" of the Commerce Clause).

While the Supreme Court itself has not formally applied to the Foreign Commerce Clause the three categories of activity that may be regulated under the Interstate Commerce Clause, lower court decisions evaluating Congress's extraterritorial power under the Clause have generally either adopted this framework, as modified to apply to commerce "with foreign Nations," or have used it as a "guide" or relevant starting point.  *See, e.g., United States v. Bredimus,* 352 F.3d 200, 205-06 (5th Cir. 2003) (applying categories to uphold 18 U.S.C. § 2423(b)); *United States v. Cummings,* 281 F.3d 1046, 1049 & n.1 (9th Cir. 2002) (applying categories to uphold International Parental Kidnapping Crime Act); *see also Clark,* 435 F.3d at 1116 (stating "categories are a guide" in upholding commercial prong of 18 U.S.C. § 2423(c)).  This approach makes sense, since, notwithstanding the differences between interstate and foreign commerce, the clause contains the same word "Commerce" applied in the same sentence "with foreign Nations, and among the several States."  U.S. Const. art. I, § 8, cl. 3.  Accordingly, in Part II below, the three Commerce Clause categories of permitted regulatory activity, as modified to commerce "with foreign Nations," will be applied to the non-commercial prong of § 2423(c).

## B.  <u>Transportation of Minors, 18 U.S.C. § 2423</u>

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108-21, 117 Stat 650 (2003), which

among other things established the offense with which Mr. Hardeman is now charged, illicit non-commercial sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c).  The current structure and recent history of this code section are addressed briefly below.

Title 18 United States Code Section 2423, entitled, "**Transportation of minors**," currently provides as follows:

> **(a) Transportation with intent to engage in criminal sexual activity.**--A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

> **(b) Travel with intent to engage in illicit sexual conduct.**--A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

> **(c) Engaging in illicit sexual conduct in foreign places.**--Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

> **(d) Ancillary offenses.**--Whoever, for the purpose of commercial advantage or private financial gain, arranges, induces, procures, or facilitates the travel of a person knowing that such a person is traveling in interstate commerce or foreign commerce for the purpose of engaging in illicit sexual conduct shall be fined under this title, imprisoned not more than 30 years, or both.

> **(e) Attempt and conspiracy.**--Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.

> **(f) Definition.**--As used in this section, the term "illicit sexual conduct" means (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

> **(g) Defense.**--In a prosecution under this section based on illicit sexual conduct as defined in subsection (f)(2), it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the person with whom the defendant engaged in the commercial sex act had attained the age of 18 years.

18 U.S.C. § 2423.

Before the PROTECT Act became law, § 2423 included just two subsections, (a) and (b).  *See Clark,* 435 F.3d at 1104.   Without changing the title of § 2423, the PROTECT Act greatly expanded its scope by replacing this subsection (b) with the new subsections (b) through (g) appearing above, with the new subsection (b) remaining substantively the same as the former subsection (b).  *See id.* at 1105.  Subsection (c) is an entirely new section which deletes the "for the purpose of" language found in subsection (b) for foreign, but not interstate, travel.  *See id.*  The conference report accompanying the PROTECT Act explains that Congress deliberately removed the intent requirement from § 2423(c) so that "'the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country.'"  *Id.* (citation omitted). As a result, "for § 2423(c) to apply, the two key determinations are whether the defendant 'travel[ed] in foreign commerce' and 'engages in any illicit sexual conduct.'"  *Id.*

As explained by the Ninth Circuit, the two prongs of § 2423(f)(1) & (2) define "illicit sexual conduct" in two ways, "non-commercial" and "commercial":

> First, the definition includes a sexual act (as defined in section 2246 [18 U.S.C. § 2246]) with a person under 18 years of age that would be in violation of chapter 109A [18 U.S.C. §§ 2241 et seq.] if the sexual act occurred in the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 2423(f)(1). Chapter 109A, in turn, criminalizes various forms of sexual abuse including, for example, aggravated sexual abuse by force, threat, or other means, 18 U.S.C. § 2241(a)-(b); sexual abuse by threatening or placing that other person in fear, 18 U.S.C. § 2242; and sexual abuse of a minor or ward, 18 U.S.C. § 2243. These violations share the common characteristic that there is no economic component to the crime. In other words, they are non-commercial sex acts.
>
> In contrast, the second prong of the definition covers "any commercial sex act (as defined in section 1591[18 U.S.C. § 1591] ) with a person under 18 years of age." 18 U.S.C. § 2423(f)(2). "Commercial sex act," in turn, is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(c)(1).

*Id.* (square brackets in original).  As discussed in detail below, this distinction between the commercial and non-commercial prongs of § 2423(c) was critical to the Ninth Circuit's decision in *Clark* upholding the former, and suggesting that the latter exceeds Congress's authority under the Foreign Commerce Clause.

/ / /

## II.   NON-COMMERCIAL PRONG OF § 2423(c) VIOLATES COMMERCE CLAUSE

As modified to fit commerce "with foreign Nations," the three-category Commerce Clause framework provides Congress with the power:  (1) to regulate the use of the channels of foreign commerce with the United States; (2) to regulate and protect the instrumentalities of foreign commerce with the United States, or persons or things in foreign commerce with the United States, even though the threat may come only from intra-national activities; and (3) to regulate those activities having a substantial relation to foreign commerce with the United States, *i.e.,* those activities that substantially affect foreign commerce with the United States.  *See* Colangelo, 96 Va. L. Rev. at 986.  It is respectfully submitted that the non-commercial prong of § 2423(c) exceeds the scope of Congress's regulatory authority under each of these categories.  Most decisions analyzing § 2423, including the Ninth Circuit in *Clark,* have done so under some variation of the third category, as modified to apply to foreign commerce.  However, before reaching the third category, the inapplicability of the first two categories to § 2423(c) is briefly addressed.

### A.   First Two Categories Plainly Do Not Apply to § 2423(c)

Although § 2423(c) contains an element requiring proof of travel "in foreign commerce," this provision's criminalization of non-commercial sexual abuse of minors overseas is not justified by either the channels or instrumentalities Commerce Clause categories because the misconduct it regulates occurs outside the channels of foreign commerce.[1]  This distinction is well illustrated by § 2423(b), and other similar statutes proscribing travel with the intent to commit a crime, which have been found to be constitutional under those categories.

The Supreme Court has long recognized that Congress has the authority "to keep the channels of interstate commerce free from immoral and injurious uses."  *Caminetti v. United States,* 242 U.S.

---

[1]  The Ninth Circuit recently reaffirmed that such a "'jurisdictional hook'" is not "'a talisman that wards off constitutional challenges.'"  *United States v. Alderman,* 565 F.3d 641, 648 (9th Cir. 2009) (citation omitted).  On the contrary, "'[t]he Supreme Court's decisions in *Lopez* and *Morrison* [], reject the view that a jurisdictional element, standing alone, serves to shield a statute from constitutional infirmities under the Commerce Clause.'"  *Id.* (citation omitted, alterations in original).

470, 491 (1917) (upholding convictions under Mann Act for transporting women across state lines for immoral purposes).  However, for a criminal statute to be constitutional under the channels or instrumentalities categories, proof of "just crossing the state border is not enough"; rather, such criminal statutes must require the government to "prove that the crossing was made with the intent to engage in the proscribed conduct."  *United States v. Gamache,* 156 F.3d 1, 8 (1st Cir. 1989) (upholding constitutionality of interstate commerce prong of § 2423(b)).  Otherwise, no criminal conduct would necessarily occur while the channels of commerce were actually being used.  Along these lines, as noted above, § 2423(b) criminalizes travel in interstate or foreign commerce for the purpose of engaging in illicit sexual conduct.  *See* 18 U.S.C. § 2423(b).  To be found guilty of this offense, the government must prove that the defendant had the intent to engage in the illicit sexual conduct at the time that he traveled in foreign commerce.  *See id.*  For this reason, § 2423(b) and statutes like it are constitutional under the first and second Foreign Commerce Clause categories. *See, e.g., Bredimus,* 352 F.3d at 205-06 (5th Cir. 2003) (upholding constitutionality of foreign commerce prong of § 2423(b) under the "channels of commerce" category); *see also Cummings,* 281 F.3d. at 1049 & n.2 (upholding constitutionality of statute criminalizing the removal of a child from the United States "with intent to obstruct the lawful exercise of parental rights" under the "channels of foreign commerce" category).

By contrast, as noted above, § 2423(c) was deliberately enacted without any such intent requirement.  Accordingly, it cannot meet the constitutional requirements of the channels or instrumentalities Commerce Clause categories.  *See, e.g.,* Colangelo, 96 Va. L. Rev. at 992 ("[W]hile Section 2423(b) can constitutionally stand on a channels theory, Section 2423(c) fails to obey both the nexus and foreign sovereignty limits on Congress's ability to regulate channels of foreign commerce with the United States."); *see also* Jeff Christensen, Notes & Comments, Congressional Power to Regulate Noncommercial Activity Overseas: Interstate Commerce Clause Precedent Indicates Constitutional Limitations on Foreign Commerce Clause Authority, Wash. L. Rev. 621, 640 (2006) (concluding that § 2423(c) "fails to satisfy the channels or instrumentalities

prongs of the framework because the noncommercial sexual abuse of minors overseas occurs outside the channels of foreign commerce").

Consistent with this analysis, the Ninth Circuit did not uphold the commercial prong of § 2423(c) under either of those first two Commerce Clause categories, but rather explained that it was constitutional only because its "combination of requiring travel in foreign commerce, coupled with engagement in a commercial transaction while abroad, implicates foreign commerce to a constitutionally adequate degree." *Clark,* 435 F.3d at 1114.[2]  This Court should likewise hold that non-commercial prong of § 2423(c) is not justified by either of the first two Commerce Clause categories, and instead, that provision must stand or fall under the third Commerce Clause category.

**B.       Non-Commercial Prong of § 2423(c) Exceeds Scope of Third Category**

Those cases, like *Clark,* that have analyzed the constitutionality of either the commercial or non-commercial prongs of § 2423(c) under the Foreign Commerce Clause have done so, explicitly or implicitly, under the some variation of the third Commerce Clause category, as modified to address activities that substantially affect foreign commerce with the United States.  Because these decisions rely heavily on the Supreme Court's recent analysis of the third Commerce Clause category in *Gonzales v. Raich,* 545 U.S. 1 (2005), that precedent is as a preliminary matter briefly addressed below before applying it to § 2423(c).

**1.       *Raich* and *Morrison* on the Third Commerce Clause Category**

In *Raich,* users and growers of marijuana for medical purposes under the California Compassionate Use Act sought declaratory relief that the federal Controlled Substances Act (CSA),

---

[2]  The district court in *Clark* did uphold the commercial prong of § 2423(c) under the "channels" category after "both parties agree[d]" that it was the proper analytical framework.  *See United States v. Clark,* 315 F. Supp.2d 1127, 1133 (W.D. Wash. 2004).  However, the Ninth Circuit, in affirming the district court's denial of the defendant's motion to dismiss, fell short of endorsing that approach, stating only that "there is a good argument that, as found by the district court, § 2423(c) can also be viewed as a valid regulation of the 'channels of commerce.'"  *Clark,* 435 F.3d at 1116.  Instead, the Ninth Circuit's analysis in *Clark* applies the test of the third category in *Gonzales v. Raich,* 545 U.S. 1 (2005), which had not been decided at the time that of the district court's ruling.  *See* Part II.B.2. *infra.*

MOTION TO DISMISS COUNT ONE UNDER
THE FOREIGN COMMERCE CLAUSE                          - 9 -

1    generally proscribing without exception the possession and distribution of marijuana and other

2    drugs, was unconstitutional as applied to them.  *See* 545 U.S. at 7-8.  Reversing the Ninth Circuit's

3    decision that criminalizing the "separate and distinct class" of "intrastate, noncommercial cultivation

4    and possession of cannabis for personal medical purposes as recommended by a patient's physician"

5    was an unconstitutional exercise of Congress's Interstate Commerce Clause authority, the Supreme

6    Court upheld the CSA under the third Commerce Clause category, as implemented through the

7    Necessary and Proper Clause.  *See id.* at 8-9.

8        The Supreme Court in *Raich* began by noting that the CSA is a "closed regulatory system

9    making it unlawful to manufacture, distribute, dispense, or possess any controlled substance."  *Id.* at

10   13.  Then, applying the third Commerce Clause category, the Court reaffirmed that "[o]ur case law

11   firmly establishes Congress' power to regulate purely local activities that are part of an economic

12   'class of activities' that have a substantial effect on interstate commerce."  *Id.* at 17 (citations

13   omitted).  In particular, the *Raich* decision relied upon *Wickard v. Filburn,* 317 U.S. 111 (1942), in

14   which the Court had held that Congress could regulate a farmer's production of wheat for his own

15   consumption, even though it was "purely intrastate activity that is not itself 'commercial,' in that it is

16   not produced for sale, if it concludes that failure to regulate that class of activity would undercut the

17   regulation of the interstate market in that commodity."  *Id.* a 18.  Accordingly, the Court in *Raich*

18   held that, "Congress had a rational basis for believing that failure to regulate the intrastate

19   manufacture and possession of marijuana would leave a gaping hole in the CSA," and therefore, "as

20   in *Wickard,* when it enacted comprehensive legislation to regulate the interstate market in a fungible

21   commodity, Congress was acting well within its authority to 'make all Laws which shall be

22   necessary and proper' to 'regulate Commerce . . . among the several States.'"  *Id.* at 22.

23       In doing so, the *Raich* Court reaffirmed but distinguished its prior decision in *Morrison.  See*

24   *id.* at 25-26.  As noted above, in striking a key section of the Violence Against Women Act of 1994,

25   proscribing any "crime of violence motivated by gender," as exceeding Congress' authority under

26   the third Interstate Commerce Clause category, the Court in *Morrison* expressly "reject[ed] the

MOTION TO DISMISS COUNT ONE UNDER
THE FOREIGN COMMERCE CLAUSE                          - 10 -

argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."  529 U.S. at 617 (citing *Lopez,* 514 U.S. at 568).  By contrast, the Court in *Raich* explained that, "[u]nlike those at issue in *Lopez* and *Morrison,* the activities regulated by the CSA are quintessentially economic."  545 U.S. at 25.  "The CSA is a statute that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market.  Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product."  *Id.* at 26 (footnote omitted).  As such, the Court explained that, "[b]ecause the CSA is a statute that directly regulates economic, commercial activity, our opinion in *Morrison* casts no doubt on its constitutionality."  *Id.*

Finally, the Court in *Raich* held that limiting the challenged "activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place [those] activities beyond congressional reach" because the Supremacy Clause "unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."  *Id.* at 27-29.  Thus, the Court held the CSA was constitutional under the third Commerce Clause category because Congress, empowered to established the supreme law of the land, enacted comprehensive national regulation of a distinctly commercial activity, unlike the noneconomic conduct at issue in *Morrison.*

## 2.   *Clark* and Other Cases Apply *Raich* to § 2423(c)

The Ninth Circuit in *Clark* applies the test set forth by the Supreme Court in *Raich* in distinguishing *Morrison* to uphold the constitutionality of 18 U.S.C. § 2423(c) as affecting illicit commercial sexual conduct in foreign places, while at the same time strongly suggesting that the non-commercial prong of § 2423(c) at issue here would be unconstitutional.  *See* 435 F.3d 1114-16.  Out-of-circuit cases addressing the constitutionality of § 2423(c) likewise apply the test in *Raich.*  Under this test, the Court here should dismiss Count One of the indictment charging Mr. Hardeman with illicit non-commercial sexual conduct in foreign places.

/ / /

After canvassing the structure and history of the Commerce Clause, the *Clark* court states that it will analyze the commercial sexual conduct prong of § 2423(c) by "[t]aking a page from *Raich.*" 435 F.3d at 1114.[3]  Specifically, looking to the text of § 2423(c) to discern whether it has a constitutionally tenable nexus with foreign commerce, the Ninth Circuit holds "that § 2423(c)'s combination of requiring travel in foreign commerce, coupled with engagement in a commercial transaction while abroad, implicate foreign commerce to a constitutionally adequate degree." *Id.*  In doing so, the Ninth Circuit explains that the "essential economic character of the commercial sex acts regulated by § 2423(c) stands in contrast to the non-economic activities regulated by the statutes at issue in *Lopez* and *Morrison.*" *Id.* at 1115 (citations omitted).  Rather, "[l]ike the statute regulating illicit drugs at issue in *Raich,* the activity regulated by the commercial sex prong of § 2423(c) is 'quintessentially economic,' and thus falls within foreign trade and commerce." *Id.* (citation and footnote omitted).

The Ninth Circuit was careful in *Clark* to emphasize that it was limiting its "holding to § 2423(c)'s regulation of commercial sex acts" and that it was "not decid[ing] the constitutionality of § 2423(c) with respect to illicit sexual conduct covered by the non-commercial prong of the statute, such as sex acts accomplished by use of force or threat." *Id.* at 1110 & n.16 (citation omitted).  However, the unmistakable implication of the Ninth Circuit's reliance on the "the "essential economic character of the commercial sex acts regulated by § 2423(c)" to analogize to the statute upheld in *Raich,* and distinguish the statutes overruled in *Lopez* and *Morrison,* is that the non-commercial prong of the statute as indicted here against Mr. Hardeman exceeds Congress's authority

---

[3]  The opinion in *Clark* does not explicitly label its analysis of § 2423(c) as being within the "third category."  In fact, just prior to announcing its intention to rely on the test in *Raich,* the *Clark* court suggests that in analyzing that statute under the Foreign Commerce Clause "we find ourselves in sparsely charted waters." 435 F.3d at 1114; *see also id.* at 116 ("The categories are a guide, not a straightjacket.").  However, it is undisputable that the Supreme Court in *Raich* was applying the third Commerce Clause category.  *See* 545 U.S. at 17 ("Only the third category is implicated in the case at hand.").  In any event, regardless of whatever name is given to the test applied by the Ninth Circuit in *Clark,* it compels the result that the non-commercial sexual conduct prong of § 2423(c) is unconstitutional.

under the Foreign Commerce Clause.  Like the gender-motivated crimes of violence regulated by the provision of the Violence Against Women Act struck by *Morrison* in particular, the illicit sexual conduct regulated by the non-commercial prong of § 2423(c) is "not, in any sense of the phrase, economic activity."  *Morrison,* 529 U.S. at 613.  Accordingly, this Court should dismiss Count One of the indictment charging a violation of that statute.

Ironically, in the only published decision in any jurisdiction addressing the constitutionality of the non-commercial prong of § 2423(c) under the Foreign Commerce Clause, a Texas district court purports to apply *Clark* and *Raich* to uphold that statute.  *See United States v. Martinez,* 599 F. Supp.2d 784, 803-08 (W.D. Tex. 2009).  However, as demonstrated below, the fatally flawed analysis of the district court in that case, subsequently adopted in other unpublished out-of-circuit decisions, is true to neither *Clark* nor *Raich* and fundamentally misconstrues Congress's authority under the Foreign Commerce Clause.

The court in *Martinez* begins its analysis of the non-commercial prong of § 2423(c) under the Foreign Commerce Clause by citing *Clark* and other cases for the proposition that the three category framework used to analyze statutes under the Interstate Commerce Clause is "a relevant starting point" but that Congress's authority under the Foreign Commerce Clause "is accorded even greater deference."  *Id.* at 805 (citations omitted).  However, in citing to the Supreme Court's decisions in *Japan Line* and *Board of Trustees* discussed in Part I.A. above, the district court fails to recognize that those cases emphasizing the broad authority of Congress to regulate under the Foreign Commerce Clause involved the "inward looking" regulation of the effects of foreign commerce on the United States.  By contrast, neither of those decisions involved the regulation of the effect of foreign commerce on other nations, particularly as to conduct wholly occurring within the borders of a separate sovereign nation, under the "outward looking" aspect of the Foreign Commerce Clause.[4]

---

[4] The *Martinez* court misleadingly cites to *Clark* for the proposition that, "for jurisdictional purposes, . . . the term 'travels in foreign commerce'' unequivocally establishes that Congress specifically invoked the Foreign Commerce Clause."  *Id.* at 806 (citing *Clark,* 435 F.3d at 1114).  In fact, as noted above, the Ninth Circuit in *Clark* repeatedly stated that it was only the "combination of

Nevertheless, in determining how to analyze § 2423(c) under the Foreign Commerce Clause, *Martinez,* like *Clark,* properly looks to the Supreme Court's analysis in *Raich.  See id.* at 806 ("The Court finds the answer to this question in the principles set forth in one of the Supreme Court's more recent discussions of Congress's power under the Commerce Clause - *Gonzales v. Raich.*"). However, after conceding that "the alleged illicit sexual conduct in the instant case is not itself commercial," the *Martinez* court then, in an astonishing non-sequitur, cites *Clark* for the proposition that "a worldwide market exists for child prostitution, an activity that is 'quintessential economic' in nature, and that falls within foreign trade and commerce." *Id.* at 807 (citing *Clark,* 435 F.3d at 1115). Of course, the Ninth Circuit in the cited passage of *Clark* was, as discussed above, exclusively addressing the *commercial* sex acts covered by § 2423(c), after making clear that the *non-commercial* prong was a different matter entirely. *See Clark,* 435 F.3d at 1115.

Accelerating down the wrong track, *Martinez* then states that "[s]imilar to *Raich,* there is a rational basis for concluding that leaving non-commercial sex with minors outside of federal control could affect the price for child prostitution and other market conditions in the child prostitution industry," and concludes that "Congress had a rational basis for believing that failure to regulate the non-commercial sexual abuse of minors 'would leave a gaping hole' in the PROTECT Act and its ability to regulate the commercial industry of child prostitution." *Id.* (citing *Raich,* 545 U.S. at 19, 22). This is "nonsense upon stilts."[5]

---

requiring travel in foreign commerce, coupled with engagement in a commercial transaction while aborad" that "implicates foreign commerce to a constitutionally adequate degree." *Clark,* 435 F.3d at 1114; *see also id.* at 1116 ("The combination of Clark's travel in foreign commerce and his conduct of an illicit commercial sex act in Cambodia shortly thereafter puts the statute squarely within the Congress's Foreign Commerce Clause authority."). An unpublished district court decision similarly upholding the non-commercial prong of § 2423(c) makes the same error as the court in *Martinez.  See United States v. Pendleton,* 2009 WL 330965 (D.Del. Feb. 11, 2009) at *4 (purporting to cite *Clark,* 435 F.3d at 1114, for the proposition that it is the "foreign travel element"– "not the commercial nature of the sexual act – that places the provisions at issue 'squarely within Congress' authority to regulate and protect' Foreign Commerce").

[5] J. Bentham, Anarchical Fallacies, in 2 Works of Jeremy Bentham 501 (1843), *quoted in Arave v. Creech,* 507 U.S. 463, 497 (1993) (Blackmun, J. dissenting). And yet it is somehow this passage that is quoted by a divided panel of the Third Circuit in an unpublished memorandum

As an initial matter, the *Martinez* court shockingly identifies, as the rational interest of the United States in regulating non-commercial sexual conduct occurring entirely within a separate sovereign nation, the need to support the market for legitimate child prostitution since, presumably, people in other countries who sexually assault children without paying them are taking desirable business away from commercial child sex workers, much like the farmers in *Wickard* whose home-grown wheat was depressing the commercial wheat market.  In any event, even if this were a rational federal interest, the Supreme Court in *Raich* distinguished its prior holding in *Morrison* that Congress may not "regulate noneconomic, criminal conduct based solely on that conduct's aggregate effect" on commerce, *Morrison,* 529 U.S. at 617, by emphasizing that the Controlled Substances Act "directly regulates economic, commercial activity," *Raich,* 545 U.S. at 26.  However, the *non-commercial* prong of § 2423(c) by definition regulates activity that is *not commercial.*

Moreover, the textual and structural differences between the Interstate Commerce Clause and the "outward looking" aspect of the Foreign Commerce Clause support the commonsense conclusion that Congress does not have the same authority to enact "comprehensive legislation to regulate" international markets as it does for interstate markets.  First, the text of the Interstate Commerce Clause refers to regulating commerce "*among* the several States," while the Foreign Commerce Clause refers to regulating commerce "*with* foreign Nations."  U.S. Const. art I, § 8, cl. 3 (emphasis added).  Significantly, the constitution thus does not purport to "grant Congress a general, global regulatory power over commerce 'among' foreign nations."  Colangelo, 96 Va. L. Rev. at 1021.  As a result, local activities occurring wholly within a foreign country, such as those addressed by the non-commercial prong of § 2423(c), cannot "undercut the regulation" by the United States of any "inter[national] market in that commodity," and are therefore outside the reach of congressional control.  *Raich,* 545 U.S. at 18.

---

disposition summarily upholding the non-commercial prong of § 2423(c) under the Foreign Commerce Clause.  *See United States v. Bianchi,* 386 Fed.Appx. 156, 162 (3d Cir. July 2, 2010) (quoting *Martinez,* 599 F. Supp.2d at 808).

In addition, regulation under the "outward looking" aspect of the Foreign Commerce Clause lacks the structural support of the Supremacy Clause that the Supreme Court in *Raich* expressly relied upon. *See id.* at 29. As noted above, the Court in *Raich* in part bases its upholding of the federal regulation by the CSA of marijuana use permitted under state law by explaining: "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail. It is beyond peradventure that federal power over commerce is superior to that of he States to provide for the welfare of necessities of their inhabitants, however legitimate or dire those necessities may be." *Id.* (citations and internal quotation marks omitted).

By contrast, there is of course no equivalent constitutional provision that gives the U.S. Congress supreme power over other sovereign nations to "provide for the welfare of necessities of their inhabitants." And it would lead to absurd results if there were. For example, what if the United States wanted to give extraterritorial effect to its criminal regulation of behavior in other countries that is legally permitted there (such as smoking marijuana in Amsterdam) or even legally required there (such as driving on the left side of the road in England)? If these other countries had a federal system similar to the United States, then the absurd result of such a broad reading of the "outward looking" Foreign Commerce Clause would be that the federal government of the United States would have more authority to regulate non-commercial activity occurring wholly within their borders than do those countries themselves, and concomitantly those countries would have more authority to regulate non-commercial activity here than does our own federal government. This idea turns the whole notion of national sovereignty completely on its head.

It is for this reason that it is so critical to keep in mind that the broad authority of the Congress recognized by the Supreme Court to regulate under the Foreign Commerce Clause has only been in the "inward looking" context of the domestic effects of such commerce, and never with an "outward looking" respect to the non-commercial activity occurring wholly within the borders of another country, as presented by the charge under § 2423(c) as indicted against Mr. Hardeman.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

For the aforementioned reasons, the Court should dismiss Count One of the indictment under the Foreign Commerce Clause.

Dated:  April 19, 2011

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/s/

DANIEL P. BLANK
Assistant Federal Public Defender