*E-Filed 4/20/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-0859 RS |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II OF THE INDICTMENT** |
| v. | |
| GARY HARDEMAN, | |
| Defendant. | |

## I. INTRODUCTION

On November 23, 2010, a grand jury returned a two-count indictment against defendant Gary Hardeman. He is charged in Count One with engaging in illicit sexual conduct in Mexico between on or about October 22, 2007 and December 17, 2007, in violation of 18 U.S.C. section 2423(c) and, in Count Two, with failure to register as a sex offender as required by California law, pursuant to 18 U.S.C. section 2260A. That section imposes punishment where a registration failure accompanies an underlying sex offense. Relying on those protections guaranteed by the Fifth Amendment's Double Jeopardy Clause and the doctrine of collateral estoppel, Hardeman moves here to dismiss Count Two. He argues an issue necessary to resolution of the section 2260A registration claim was necessarily decided in his favor when the United States in 2009 dismissed with prejudice an indictment. That indictment charged Hardeman with a single count: failure to register as a sex offender, as required by 18 U.S.C. section 2250(a). As explained below, Hardeman

cannot demonstrate that the central question—whether the government would be able to prove with admissible evidence that he was required to register as a sex offender on account of two previously set-aside convictions—was necessarily decided in the prior case. His motion therefore must be denied.

## II.  FACTUAL SUMMARY

### 1. General Background

Hardeman is a Bay Area native, and was steadily employed as a salesman until he opted to serve as a live-in caregiver for his elderly parents. He is 55 years old, has an adult daughter who resides in Mexico, and has incurred two prior convictions.[1] The first conviction, from 1980, was a felony for lewd and lascivious conduct with a minor. The second was a misdemeanor conviction in 1986 for annoying a child. Both were later set aside under a California statute allowing for withdrawal of a plea of guilty. That statute by its terms also removes all "penalogical consequences" associated with conviction. *See* Cal. Penal Code § 1203.4.

### 2. The 2008 Indictment

On November 12, 2008, a federal grand jury returned an indictment charging Hardeman with failing to register as a sex offender, in violation of 18 U.S.C. section 2250(a), a part of the Sex Offender Registration and Notification Act ("SORNA"). The United States alleged that Hardeman travelled to Mexico between October 23, 2007 and February 18, 2008, while under an obligation to register as a sex offender, and thereafter failed to register as required. In conjunction with an unsuccessful effort to obtain pretrial detention in that case, the prosecutor advised that the government was considering the institution of additional charges against Hardeman for engaging in illicit sexual conduct in a foreign place, pursuant to the very statute, 18 U.S.C. section 2423(c), on which Count One of the 2010 indictment is based. The reviewing court pointed out that while the government was free to present the uncharged conduct to a grand jury, it had not done so at that

---

[1] The effect, if not the status, of Hardeman's prior "convictions" are at issue in this litigation. Where this Order refers to them as such, it is merely to detail Hardeman's history and it is always with the understanding that his pleas of guilty were withdrawn by California Penal Code section 1203.4.

point, prompting the court to order Hardeman released on conditions.

In that underlying action, Hardeman moved to dismiss the indictment, challenging the constitutionality of SORNA's sections 2250(a) and 16913 (the latter imposing a federal requirement that anyone "convicted" of a sex offense register under certain circumstances, even if the individual never travels in interstate commerce) under the Commerce Clause. Hardeman also argued that SORNA at any rate did not apply to him, because his two predicate convictions were set aside, pursuant to California Penal Code section 1203.4.[2] The district court denied the motion, finding first that the Act did not violate the Commerce Clause and, second, that that it was "unable to conclude as a matter of law that the subsequent dismissal of a state conviction . . . necessarily withdraws that conviction from the ambit of SORNA." *United States v. Hardeman*, 598 F. Supp. 2d 1040, 1049 (N.D. Cal. 2009). The matter was set for trial shortly thereafter. On the day *in limine* motions and other pretrial matters were due, however, the United States filed a notice, pursuant to Federal Rule of Criminal Procedure 48(a), of dismissal "without prejudice." In a written order, the district court requested that the prosecution explain its request and address whether the court should vacate its Order on the motion to dismiss.

In response, the United States represented that various factual and legal weaknesses had come to light, obligating it to dismiss the indictment. The United States also emphasized that the reason driving dismissal was unrelated to the analysis undertaken in the court's Order. Suggesting that the Order might lend guidance to courts faced with similar constitutional challenges, the United States encouraged the court to leave it in place. The United States' response also indicated that defense counsel had affirmed Hardeman did not object to dismissal. At a hearing scheduled soon thereafter, the court asked the government to explain its "evidence problem." The government responded that it had in the course of its investigation realized it would be unable to prove Hardeman changed residences, so as to trigger SORNA's registration requirement. The court then indicated that the government should either dismiss the indictment with prejudice or proceed to trial

---

[2] Hardeman never disputed that he had travelled to Mexico and then failed to register as a sex offender.

No. C 10-0546
ORDER

3

as planned. That same day, the United States filed a notice of dismissal with prejudice.

### 3. The 2010 Indictment

The 2010 indictment advances the "sex tourism" charge alluded to at the earlier detention hearing, and includes a penalty enhancement for failure to register as a sex offender as required by state or federal law. This time, however, the United States does not rely on SORNA but instead on those sex offender registration obligations imposed by the State of California.

## III. LEGAL STANDARD

Hardeman grounds his issue preclusion arguments on the Fifth Amendment's Double Jeopardy Clause. The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Some time ago, the Supreme Court recognized how that clause "incorporates" the doctrine of collateral estoppel. *Ashe v. Swenson*, 397 U.S. 436 (1970). Accordingly, the Double Jeopardy Clause does more than "bar a second prosecution on the same charge of which a defendant has been previously acquitted (or convicted)." *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007). "It also prevents the government from seeking to prosecute a defendant on an issue that has been determined in the defendant's favor in a prior prosecution, regardless of the particular offense involved in the earlier trial." *Id.* (*citing Ashe*, 397 U.S. at 443).

As *Ashe* explained, the concept provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. Put another way, "[w]hen an issue of fact or law is actually litigated and determined by a final and valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Castillo-Basa*, 483 F.3d at 897 (*citing United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir. 1978)). Accordingly, "[w]here a previous judgment of acquittal was based upon a general verdict," and where a defendant seeks to invoke the collateral estoppel doctrine to bar a subsequent prosecution regarding a particular issue, a court is required to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other

relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (*quoting* Daniel K. Mayers & Fletcher L. Yarbrough, *Bix Vexari: New Trials and Successive Prosecutions*, 74 Harv. L. Rev. 1, 38-39 (1960)). Courts in the Ninth Circuit implement *Ashe*'s "charge" through a three-step process:

> (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case. *Castillo-Basa*, 483 F.3d at 897.

## IV.  DISCUSSION

### A.  Attachment of Jeopardy

Hardeman in his motion relies on the Double Jeopardy Clause. There is some question as to whether he can do so. In one of its paradigmatic cases on the subject, *Serfass v. United States*, 420 U.S. 377 (1977), the Supreme Court emphasized the utility in defining "a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" 420 U.S. at 388 (*citing United States v. Jorn*, 400 U.S. 471, 480 (1971)). "In the case of a jury trial," the Court explained, "jeopardy attaches when a jury is empanelled and sworn." *Id.* (*citing Downum v. United States*, 372 U.S. 734 (1963); *Illinois v. Somerville*, 410 U.S. 458 (1973)). In a nonjury trial, jeopardy attaches when the court "begins to hear evidence." *Id.* (citations omitted). Jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is "put to trial before the trier of facts, whether the trier be a jury or a judge.' *Id.* (*quoting Jorn*, 400 U.S. at 479).[3]

---

[3] While the Supreme Court has disparaged "'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause," *Serfass*, 420 U.S. at 390 (*quoting Illinois v. Somerville*, 410 U.S. 458, 467 (1973)), it has also observed in the same breath "that the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Id.* at 390 (citation and internal quotation marks omitted). "Implicit in the latter statement is the premise that the 'constitutional policies underpinning the Fifth Amendment's guarantee' are not implicated

The record here reflects that Hardeman was anticipating a jury trial, that he did not waive his right to one, and that a jury was never empanelled. It would seem, then, that Hardeman indisputably was never placed in jeopardy. He addressed this reality at the hearing on his motion to dismiss, and clarified that although he invokes the Double Jeopardy Clause in his motion, jeopardy need not attach for a defendant to rely upon the collateral estoppel doctrine.[4] Following *Ashe v. Swenson*, the Supreme Court has characterized collateral estoppel, or issue preclusion, as "an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments." *Harris v. Washington*, 404 U.S. 55, 56 (1971). To that end, the Ninth Circuit in *Castillo-Basa* "use[d] the terms 'collateral estoppel' and 'double jeopardy' interchangeably and deliberately, as well as most appropriately, [brought] 'double jeopardy atmospherics into the equation.'" 483 F.3d at 897 n.3. If there is a principled reason why the attachment requirement embraced in *Serfass* would apply to claim but not issue preclusion, then, it does not immediately spring from the text of *Ashe* or its progeny.

A closer look at *Ashe*, however, lends some support to Hardeman's position. The Court in *Ashe* described the principle of collateral estoppel as one that had been declared by Justice Holmes "more than 50 years ago in *United States v. Oppenheimer* as an established rule of federal criminal law . . . ." *Ashe*, 397 U.S. at 443. Technically, *Oppenheimer* involved the application of claim preclusion and res judicata, but the overarching point advanced there was an important one. *Oppenheimer* emphasized that the protections afforded a civil plaintiff cannot sensibly exceed those of a criminal defendant (it was the expression of this sentiment that *Ashe* quoted directly). *Oppenheimer* instructed that a ruling on ultimate issues of liability has preclusive effect, regardless of timing or procedural posture:

---

before that point in the proceedings at which 'jeopardy attaches.'" *Id.* at 390-91 (*quoting Jorn,* 400 U.S. at 480). "This is by no means a mere technicality, nor is it a 'rigid, mechanical' rule," the Court explained. *Id.* at 391. "It is, of course, like most legal rules, an attempt to impart content to an abstraction." *Id.*

[4] The absence of an argument that jeopardy attached is understandable in light of the facts. Unlike in *United States v. Hill*, 473 F.2d 759 (9th Cir. 1972), where the trial court heard evidence determinative of guilt or innocence when considering a pretrial motion to dismiss, thereby triggering attachment of jeopardy, a trial judge is not in a position to decide the question of guilt in the context of a Rule 48(a) dismissal motion. Where there is no such risk, a defendant is not placed in jeopardy.

NO. C 10-0546
ORDER

> Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empanelled; or that it is conclusive if entered upon the general issue. . . . *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916).

*Ashe*, by "incorporating" collateral estoppel into the folds of the Double Jeopardy Clause, embraced *Oppenheimer*'s broadened view of a prior order's possible preclusive effect. For purposes of the pending motion, the Court assumes the availability of the doctrine of collateral estoppel untethered to a formal attachment requirement. At any rate, the United States presents no on-point authority foreclosing the possibility. The three-part *Ashe* test closely mimics the one employed in the civil context and will be applied here to determine whether issue preclusion is supported by this record.[5]

B. Final Decision on the Merits

The three-part *Ashe* inquiry presumes a final judgment on the merits. Here, Hardeman's case was never submitted to a jury and, as even he points out, "[n]ormally, the dismissal of an indictment has no preclusive effect on further proceedings because the usual reason is faulty procedure or technical defects in the words of the indictment that can be cured by reindictment."

---

[5] Classically, a federal court addressing an issue preclusion defense in the civil context would require a showing of five factors: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Stoner v. Santa Clara County Office of Educ.*, 400 Fed. Appx. 185, 186 (9th Cir. 2010) (*citing Lucido v. Super. Ct.*, 795 P.2d 1223, 1225 (1990)).

*United States v. Cejas*, 817 F.2d 595, 600 (9th Cir. 1987). The Ninth Circuit in *Cejas*, after quoting at length from *Oppenheimer*, instructed that a pretrial dismissal of an indictment will preclude reindictment on the same charge, so long as the dismissal was rendered on the merits. *Id.* at 598-600. In this case, when the United States moved to dismiss the indictment, it acknowledged an "evidence issue," and acquiesced to dismissal with *prejudice*. The prosecutor at one point explained, "I'm inclined to dismiss it with prejudice for the reason—for several reasons—but one reason being that if you have an evidence problem, it's not going to get any better in the future. So I don't see what difference it makes to you if it's with prejudice." (Tr. Feb. 4, 2009 at 11:2-5.) There is little question, then, that the United States understood it was precluded from recharging the SORNA offense in a new indictment. Certainly, had jeopardy attached, and had the United States then brought the SORNA charge again, Hardeman would have an obvious claim preclusion argument to advance. Where no such attachment comes into play, Hardeman would presumably advance a factual and legal argument mirroring that presented in *Cejas*.

SORNA, of course, is not the subject of the instant indictment and therefore the more difficult showing is not that of claim preclusion, but rather issue preclusion. Where a defendant seeks to foreclose reconsideration of an issue previously decided, the final decision on the merits is but a starting point.[6] As explained above, determining if that doctrine provides relief requires

---

[6] At oral argument, the United States criticized Hardeman's reliance on *Cejas* for the proposition that a dismissal of an indictment with prejudice can have *issue* preclusive effect. In *Cejas*, the defendant sought to block reindictment of a charge dismissed with prejudice before trial in a prior case (that court's pretrial dismissal was made on the grounds of double jeopardy, as the defendant had *already* been tried and convicted once before for the same conspiracy charged). The United States' therefore argues that, on its facts, *Cejas* contemplated *claim* preclusion. Hardeman responds by pointing to language in *Cejas* that appears to apply its rationale equally to res judicata (claim preclusion) as to collateral estoppel (issue preclusion). For example, *Cejas* wrote, "It has also been recognized that collateral estoppel could be raised as a pretrial defense to an indictment, which would bar further prosecution." *Cejas*, 817 F.2d at 598. On its face, this language is helpful to Hardeman. In the next sentence, however, the Court continued, "Thus, the dismissal of an indictment on the ground that further prosecution is barred by double jeopardy can preclude trial on a reindictment for the *same charge*." *Id.* (emphasis added). Accordingly, the United States suggests *Cejas* misused the term "collateral estoppel" in a conversation plainly focused on res judicata and claim preclusion. Even if this is true, there is nothing in *Cejas* that limits the analysis to claim preclusion. Accordingly, this Order assumes a pretrial dismissal on the merits *can* have issue

NO. C 10-0546
ORDER

8

inquiry into (1) whether the issues in the two actions are sufficiently similar and material to justify invocation of the doctrine; (2) whether the issue was "litigated" in the first case; and (3) whether it is possible to ascertain from the record that the issue was necessarily decided. *See Castillo-Basa*, 483 F.3d at 897 (discussing three-part test derived from *Ashe*).

C.  Whether the Issues are "Similar and Material"

Hardeman frames the "issue" at stake as whether the government can prove with admissible evidence that Hardeman was required to register as a sex offender, in light of the fact that his triggering convictions were set aside by California Penal Code section 1203.4. In the first case, the United States was required to show an obligation arising under SORNA. Now, it must establish that he was required to register under California law. The United States insists the difference ends the matter: if, after all, it never needed to prove he was obligated to register under state law, how can he argue the issue was *decided*? If anything is clear from the prior case, it is that the court did not resolutely decide if SORNA captured Hardeman's behavior, and it certainly did not weigh into the possible different applications of the federal and state systems.

At oral argument, Hardeman contended that focusing on the different applications of state and federal law misses his point. Hardeman suggests that what was implicitly decided in the prior case was that the government could not prove with admissible evidence the fact of prior conviction, which is what triggers a registration requirement under either system. Just prior to the United State's notice of dismissal, Hardeman filed an *in limine* motion to exclude evidence of any prior convictions, pursuant to Federal Rule of Evidence 410. That rule prohibits the introduction of evidence of a guilty plea later withdrawn. The California statute that set aside Hardeman's two convictions effectively allowed him to "withdraw" both guilty pleas. In both the prior case and in this one (once Hardeman raises it), the United States would have to overcome the Rule 410 hurdle in order to prove a prior conviction triggering a registration obligation. As Hardeman argued in his

---

preclusive effect. That, however, only answers a theoretical question, and the inquiry then becomes the application of the three-part *Ashe* test to the particular facts in this action.

No. C 10-0546
ORDER

9

reply brief, "The evidentiary issue presented by [Rule 410] applies equally to the current prosecution under [section] 2660A as it did to the abandoned prosecution under [section] 2250(a) in 2008." (Def.'s Reply at 7:9-11.) However complicated these two regulatory systems may be, and however similar or dissimilar, Hardeman has adequately crystallized how at least this key issue is sufficiently similar and material.

D. Whether the Issue was "Litigated"

Hardeman insists the question of whether he was required to register as a sex offender was "litigated" in the prior case. Indeed, he suggests he "litigated little else but this issue," (Def.'s Mot. at 11:26 (*quoting Castillo-Basa*, 483 F.3d at 898)), as he signed a declaration acknowledging that he traveled to Mexico during the relevant time period and did not register as a sex offender. Indeed, roughly half of his motion to dismiss focused on whether SORNA's statutory definition of "conviction" contemplated the set-aside convictions. In other words, the registration obligation was, in Hardeman's opinion, the only undisputed element to the section 2250(a) charge. Hardeman has everywhere else framed the issue more narrowly: it is whether the government can prove the fact of prior conviction with *admissible* evidence. This is, of course, a different argument than the one raised in the motion to dismiss.

Certainly, Hardeman introduced this issue. In the prior case, the United States briefly discussed its position on the Rule 410 question at the hearing on its dismissal motion. Although the prosecutor admitted she had not researched the issue, she indicated it was not the reason driving dismissal. In other words, she suggested that were the case to continue to trial, she would present a counter-argument. Hardeman therefore finds himself in a difficult position: the issue *would* have been litigated, in the sense that the government would have opposed Hardeman's argument and the court would have issued a ruling, but for the dismissal with prejudice. Nonetheless, even were the Order to credit Hardeman's position that raising an issue constitutes litigating it, the fact that neither the prosecution nor (more crucially) the prior court squarely addressed the Rule 410 issue creates an even greater problem for *Ashe*'s final showing, that the issue was necessarily decided.

E. Whether the Issue was "Necessarily Decided"

Hardeman must show the issue—whether the government could prove the fact of his prior convictions with admissible evidence—was necessarily decided.  The record in the prior proceeding is not susceptible to such a reading.  Both the form of the United States' dismissal and the statements by the trial judge run counter to Hardeman's position.

In the prior case, the United States moved to dismiss pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure.  That Rule provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint."  Fed. R. Crim. P. 48(a).  By its own terms, the Rule contemplates dismissals by the government.  As to the "leave of court" requirement, neither the Supreme Court nor the Ninth Circuit has expressly delineated the scope of a court's discretion.  *See Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) ("While [the Rule] obviously vest[s] some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court.").  What is clear, however, is that discretion is limited.  *See United States v. Gonzalez*, 58 F.3d 459, 461 (9th Cir. 1995) ("Although we apply an 'abuse of discretion' standard, . . . the district court's discretion to deny leave is limited.") (citations omitted).  As the Ninth Circuit has explained, limited discretion responds to the appropriate balance between the court and the prosecutor: "[s]eparation-of-powers concerns generally require a district court to defer to the government's decision to seek a dismissal of a criminal charge because a denial of the motion would represent an intrusion upon prosecutorial prerogative."  *Id.* at 462.

In *Rinaldi*, the Court recognized two appropriate exercises of this discretion.  "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection."  434 U.S. at 29 n.15  (citations omitted).  "But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest."  *Id.*  That is, where a defendant consents to dismissal (as Hardeman appears to have done here), discretion is limited all the more.  *See Gonzalez*, 58 F.3d at 462 (noting that discretion, where defendant consents, is limited to "exceptional" circumstances and acknowledging that the Ninth

No. C 10-0546
ORDER

11

Circuit had never found occasion to rule on a dismissal so justified); *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1984) (finding that a court may deny a Rule 48(a) motion where defendant consented to dismissal only if the motion was "clearly contrary to manifest public interest").

The discretion available is important, because it sheds light on what issues the prior Judge actually could have decided. As indicated above, the court's inquiry would have been whether dismissal of the indictment risked future harassment (in the form of "charging, dismissing, and recharging") or was clearly contrary to public interest. Because discretion to deny a Rule 48(a) motion is so limited, it is difficult to discern in a "grant," a decision that speaks to guilt or innocence, much less one that resolves particular issues. The court was not in a position to decide Hardeman's guilt. Had it denied the motion, Hardeman would have proceeded to trial by a jury of his peers. When the United States effectively *acknowledged* it could not prove Hardeman's guilt under SORNA, the court specifically refused to grant the motion unless it was with *prejudice*.

While it is clear from the record that the court surely intended "with prejudice" to have meaning, it was, as the parties appear to have understood, that the United States was foreclosed from re-indicting Hardeman on the SORNA charge. Whether the court intended that the dismissal's preclusive effect reach as far as Hardeman suggests here is another question. The transcript from the hearing on the United States' dismissal is illuminating. The prosecutor asked, "Just to be clear, as to the inquiry—the 'with prejudice'—would be as to this charge; not precluding us from any future charges that may lie?" (Tr. at 11:17-19.) The Court responded, "Well, of course. I have no way of knowing what the grand jury might do in the future." (Tr. at 11:20-21.) Several seconds later, the prosecutor verified that she would submit a dismissal "with prejudice" that afternoon. The Court responded, "All right. It is limited to the charges that are now of file, of course; but that should be with prejudice."[7] (Tr. at 12:10-12.)

From this record, Hardeman could surely demonstrate that, even though the court was faced

---

[7] Indeed, one district court evaluating the possible claim preclusive effect of another court's order granting a Rule 48(a) dismissal "with prejudice" questioned whether that court had statutory, constitutional, or even inherent authority to do so. *See United States v. Flemmi*, 283 F. Supp. 2d 400, 411 (D. Mass. 2003).

NO. C 10-0546
ORDER

with a Rule 48(a) motion and its narrow range of discretion, the court intended to preclude the government from ever bringing the section 2250(a) charge against Hardeman. Hardeman might even be able to show the court embraced the government's assertion that it could not prove up the residence requirement. What does not follow, however, is Hardeman's suggestion that the court *necessarily* decided that the government could not introduce the prior convictions, in light of Rule 410. Even if it is true that the court *would* have had to address the issue had the case proceeded to trial, the fact remains that the issue was not necessarily decided in the context of the ruling on the dismissal motion. The fact is, the court did not need to reach the issue: the government cited a separate evidentiary problem sufficient to warrant dismissal. To accept Hardeman's argument would require reading the third and final part of the *Ashe* inquiry out of the issue preclusion test. That avenue is not supported by *Cejas* or any authority introduced by the defense, and Hardeman's motion must therefore be denied.

IT IS SO ORDERED.

Dated: 4/20/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE