MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

OWEN P. MARTIKAN (CABN 177104)
Assistant United States Attorney
   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: owen.martikan@usdoj.gov

ANITHA S. IBRAHIM (CABN 254629)
Trial Attorney, U.S. Department of Justice
   Criminal Division
   Child Exploitation and Obscenity Section
   1400 New York Ave., NW 6th Fl.
   Washington, DC 20005
   Telephone: (202) 616-3181
   Facsimile: (202) 514-1793
   Email: anitha.ibrahim@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-0859 RS |
| Plaintiff, | THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT |
| v. | |
| GARY LEE HARDEMAN, | Date: June 7, 2011<br>Time: 2:30 pm |
| Defendant. | Place: Courtroom 3, 17th Floor |

USA OPP. TO MTD CT. 1
CR 10-0859 RS

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.  CONGRESS'S BROAD POWER TO REGULATE FOREIGN COMMERCE.. . . . . . . . 2

    II.  THE NINTH CIRCUIT'S FRAMEWORK FOR FOREIGN COMMERCE
        CLAUSE ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    III. CONGRESS DID NOT EXCEED ITS FOREIGN COMMERCE CLAUSE
        POWER BY CRIMINALIZING ILLICIT "NON-COMMERCIAL" SEX ACTS
        IN FOREIGN COUNTRIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Supreme Court Precedent Supports Congress's Power. . . . . . . . . . . . . . . . . . . . 5

        B.    Ninth Circuit Precedent Supports Congress's Power. . . . . . . . . . . . . . . . . . . . 6

        C.    Other Federal Courts Have Already Recognized Congress's Power to
             Regulate Non-Commercial Illicit Sexual Conduct. . . . . . . . . . . . . . . . . . . . . . 6

    IV. THE NECESSARY AND PROPER CLAUSE ALSO SUPPORTS
        CONGRESS'S POWER TO PASS SECTION 2423(c) IN ITS ENTIRETY. . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Gonzales v. Raich*, 545 U.S. 17 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Missouri v. Holland*, 252 U.S. 416 (1920).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Perez v. United States*, 402 U.S. 146 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Reid v. Covert*, 354 U.S. 1 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Bianchi*, 386 Fed.Appx. 156, 2010 WL 2650357 (3rd Cir. 2010).. . . . . . . . .6, 7

*United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*United States v. Cummings*, 281 F.3d 1046 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Frank*, 486 F.Supp.2d 1353 (S.D. Fl. 2007). . . . . . . . . . . . . . . . . . . . . . . .10

*United States v. Lara,* 541 U.S. 193 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Lopez*, 514 U.S. 549 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Martinez*, 599 F.Supp.2d 784 (W.D. Tex. 2009).. . . . . . . . . . . . . . . . . . . 7, 9, 10

*United States v. Morrison*, 529 U.S. 598 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Pendleton*, 2009 WL 330965 (D. Del. 2009).. . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. Thomas*, 893 F.2d 1066 (9th Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## FEDERAL STATUTES

18 U.S.C. § 1591. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

18 U.S.C. §2423(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# INTRODUCTION

Defendant Gary Hardeman asks the Court to dismiss Count One of the Indictment against him, which charges him with Engaging in Illicit Sex in Foreign Places in violation of 18 U.S.C. § 2423(c), because he claims that the statute, insofar as it criminalizes non-commercial sex acts in foreign countries, oversteps Congress's powers under the Foreign Commerce Clause of the U.S. Constitution.  Hardeman's argument runs contrary to both Supreme Court and Ninth Circuit authority in this area, and to the consistent and persuasive holdings of federal courts across the nation.  In rejecting Hardeman's position, the Court should take particular guidance from the Ninth Circuit's opinion in *United States v. Clark*, 435 F.3d 1100, 1116 (9th Cir. 2006), which suggested that the defendant's use of a channel of foreign commerce was sufficient to bring 18 U.S.C. § 2423(c) within the bounds of Foreign Commerce Clause authority.

Hardeman's reasoning comes not from legal precedent but from a single law review article that challenges the breadth of Foreign Commerce Clause authority granted Congress by numerous federal court decisions.  But this article suggests a scheme that has not yet been adopted by any federal court, to this writer's knowledge.

Uniform and logically coherent legal precedent supports Congress's power, under the Foreign Commerce Clause of the U.S. Constitution, to pass a law that prohibits American citizens from traveling overseas and having sex with children.  The Court should deny Hardeman's motion.

# FACTUAL AND PROCEDURAL BACKGROUND

Defendant Gary Hardeman faces a two-count Indictment charging him with traveling to Mexico between October and December, 2007, and engaging in illicit sexual conduct with a minor, while being required to register as a sex offender under state law.  Although the indictment does not charge any specific type of illicit sexual conduct, Hardeman assumes that he has been charged with "non-commercial" sexual conduct, meaning sexual conduct that does not constitute a "commercial sex act" within the meaning of 18 U.S.C. § 2423(f)(2).  A "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  From the tenor of Hardeman's motion, it appears that he

would concede the statute's constitutionality if a jury were to find that he had, or had attempted to, engage in a sex act after giving something of value to his victim.

## ARGUMENT AND AUTHORITIES

### I. CONGRESS'S BROAD POWER TO REGULATE FOREIGN COMMERCE.

The United States Constitution, at Article I, Section 8, Clause 3, grants Congress the power "[t]o regulate Commerce with Foreign Nations, and among the Several States, and with the Indian Tribes; . . . ." While much judicial writing has addressed the extent of congressional power to regulate interstate commerce, the federal courts have had much less opportunity to interpret congressional power to regulate foreign commerce. Those decisions that have addressed this aspect of congressional power, however, have uniformly recognized its breadth, even when compared to congressional power over interstate commerce. The Supreme Court, for example, has found "evidence that the Founders intended the scope of the foreign commerce power to be . . . greater that the interstate commerce power." *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 n.13 (1979). The Ninth Circuit has described the Supreme Court as "unwavering in reading Congress's power over foreign commerce broadly." *Clark*, 435 F.3d at 1113. Indeed, the Ninth Circuit noted in *Clark* that the Supreme Court had read the Foreign Commerce Clause as granting Congress "sweeping powers," and that it had yet to strike down an Act of Congress on Foreign Commerce Clause grounds. *Id*.

Unlike congressional regulation of interstate commerce, which commonly raises thorny and historically fraught issues of states' rights and national power, the congressional regulation of foreign commerce has never seen any judicial retreat from an expansive reading of the Foreign Commerce Clause. *Id*. Hardeman argues that Congress's power under the Foreign Commerce Clause is "in some ways broader" but "in some ways narrower" than Congress's power to regulate interstate commerce. Hardeman's Motion at 3. This is incorrect. There is no way in which Congress's power to regulate foreign commerce is narrower than its power to regulate commerce among the states. Hardeman relies on a single law review article in which a professor writes that Congress faces issues of extraterritoriality and international law that constrain its ability to legislate conduct in foreign countries in ways that would never arise within United

1  States borders.  Hardeman's Motion at 4 (*quoting* Anthony J. Colangelo, The Foreign Commerce
2  Clause, 96 Va. L. Rev. 949, 954 (2010)).  But the Ninth Circuit has addressed the
3  extraterritoriality and international law issues that concern Prof. Colangelo under the
4  Constitution's Due Process Clause and international law, not under the Foreign Commerce
5  Clause.  *See Clark*, 435 F.3d at 1106, 1108; *and United States v. Thomas*, 893 F.2d 1066, 1068-
6  69 (9th Cir. 1990).  And even in those cases, the Ninth Circuit has defined Congress's power
7  broadly, holding for example that Congress can penalize its citizens' extraterritorial crimes
8  without running afoul of due process.  *Clark*, 435 F.3d at 1108-09.  Under no logical
9  interpretation of the applicable jurisprudence can one conclude that Congress possesses less
10 constitutional power to regulate foreign commerce than it does to regulate interstate commerce.
11 Nor do decisions in the Ninth or other Circuits support the division of congressional power under
12 the Foreign Commerce Clause into "inward-looking" and "outward-looking" activities, as
13 Hardeman does.
14         The Court should find that Congress possesses broad power to regulate foreign
15 commerce, and that this power is in all respects broader than that granted to Congress by the
16 Interstate Commerce Clause.

**II.    THE NINTH CIRCUIT'S FRAMEWORK FOR FOREIGN COMMERCE CLAUSE ANALYSIS.**

19         While the Supreme Court has generally adhered to a three-category framework of
20 Congress's power to regulate interstate commerce – (1) the use of the channels of interstate
21 commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate
22 commerce; and (3) activities that substantially affect interstate commerce – the Ninth Circuit has
23 taken a more general, and in its view more commonsense approach to Foreign Commerce Clause
24 analysis.  *Clark*, 435 F.3d at 1103.  The Ninth Circuit asks "whether the statute bears a rational
25 relationship to Congress's authority under the Foreign Commerce Clause," when viewed as a
26 whole.  *Id*. at 1114.  This approach follows the Supreme Court's broad reading of congressional
27 power in *Gonzales v. Raich*, 545 U.S. 17, 22 (2005), where it held that applying the "rational
28 basis" analysis was a "modest" task that did not involve delving into whether the respondent's

activities, taken in the aggregate, actually had a substantial effect on interstate commerce. Following this approach, the Supreme Court concluded that Congress could regulate purely intrastate activity "that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Raich*, 545 U.S. at 18.

Thus, in *Raich*, the Supreme Court rejected the respondents' attempt to argue that Congress's regulation of the purely intra-state cultivation and use of marijuana exceeded its Commerce Clause power as "myopic" and a misreading of its earlier Commerce Clause decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000). The Supreme Court emphasized that where a class of activities is regulated and is within the reach of federal power, courts "have no power to excise, as trivial, individual instances of the class." *Raich,* U.S. at 23 (quoting *Perez v. United States*, 402 U.S. 146, 154 (1971)).

This rebuke from *Raich* of a litigant's attempt to excise an intra-state component of a statute that was otherwise clearly within Congress's Commerce Clause power resonates here, as Hardeman attempts to excise a "non-commercial" component of 18 U.S.C. § 2423(c) from a statute that he otherwise concedes falls within Congress's Foreign Commerce Clause power.

Though the Ninth Circuit in *Clark* took pains to divorce its analysis from the typical three-category Commerce Clause analysis, it nevertheless applied a foreign-commerce version of that analysis to section 2423(c). *Clark*, 435 F.3d at 1116. In so doing, the Ninth Circuit suggested that the statute was a proper regulation of the channels of foreign commerce, because the crime required international travel. *Id*. This analysis is critical here, because the Ninth Circuit's reasoning was without regard to whether the sex act on foreign soil was commercial or non-commercial, and without regard to whether the travel was undertaken with the specific intent to commit the criminal sex act. *Id.*[1]

---

[1] Indeed, given this analysis in *Clark*, it is surprising that Hardeman reads *Clark* as a strong endorsement of his Foreign Commerce Clause challenge. Hardeman's Motion at 1.

USA OPP. TO MTD CT. 1
CR 10-0859 RS                           4

**III. CONGRESS DID NOT EXCEED ITS FOREIGN COMMERCE CLAUSE POWER BY CRIMINALIZING ILLICIT "NON-COMMERCIAL" SEX ACTS IN FOREIGN COUNTRIES.**

    **A.    Supreme Court Precedent Supports Congress's Power.**

The Supreme Court's guidance in *Raich*, the Ninth Circuit's decisions in *Clark* and earlier cases, and consistent authority from across the nation support the conclusion that Congress has the power, under the Foreign Commerce Clause, to subject Americans who travel abroad and have sex with minors to criminal prosecution. In *Raich*, the Supreme Court held that a statute can reach purely intrastate commerce and still pass Commerce Clause muster if Congress had a rational basis to conclude that the prohibited activity, in the aggregate, substantially affected interstate commerce. *Raich*, 545 U.S. at 22. And if Congress had a rational basis for believing that by failing to regulate a purely intrastate transaction, it would leave a "gaping hole" in a statutory scheme that regulates interstate commerce in the broader sense, then the Court must uphold the entire statutory scheme. *Id.*

In this case, Congress had a rational basis to believe that prohibiting Americans from traveling to foreign countries to pay for sex with children, while allowing Americans to travel to foreign countries to have sex with children without paying for it, would leave a gaping hole in a statutory scheme that was intended to criminalize sex tourism. In enacting section 2423(c), Congress made clear that its purpose was not to distinguish between Americans who travel abroad and have sex with children based on whether they paid for it or not, but to attack a growing and thriving international sex tourism industry, under which children – particularly in poor countries – are exploited by Americans who know that local governments will often turn a "blind eye" to their conduct. House Report on the Sex Tourism Prohibition Improvement Act of 2002, H.R. Rep. No. 107-525, 107th Cong., 2nd Sess., 2002 at 2-3. The commerce effect of this statute is not limited to whether money changes hands before or after the sex act, but rather reaches a global sex tourism industry that allows sexual predators to travel across borders and commit violent crimes with impunity.

The Court should find that the Supreme Court's decision in *Raich* supports Congress's power to penalize sex tourism, whether the sex acts at issue are paid for or not.

**B.     Ninth Circuit Precedent Supports Congress's Power.**

The Ninth Circuit's decision in *Clark* support's Congress's power to prohibit "non-commercial" illicit sexual conduct under section 2423(c). Though the *Clark* opinion restricted itself to the so-called "commercial prong" of section 2423(c), the Ninth Circuit also noted with approval the district court's "good argument" that under a channels of commerce theory, the defendant's travel in foreign commerce before engaging in illicit sexual conduct would satisfy the Foreign Commerce Clause, irregardless of whether the sex act itself is commercial, or whether the defendant intended to commit the sex act while traveling. *Clark*, 435 F.3d at 1116. In reaching this conclusion, the Ninth Circuit relied on its earlier opinion in *United States v. Cummings*, 281 F.3d 1046, 1050 (9th Cir. 2002), where it rejected a Commerce Clause challenge to the International Parental Kidnapping Crime Act because the Act criminalized conduct that necessarily involved the use of a channel of foreign commerce; namely, the child's transportation out of the country, even though the actual criminal act took place after the travel had ended. *Id*.

Like the statutes at issue in *Clark* and *Cummings*, the criminal conduct at issue here necessarily involves travel in foreign commerce. That the actual criminal sex act takes place after the travel has ended is of no constitutional moment. The Ninth Circuit has never conditioned its Foreign Commerce Clause analysis on whether a defendant intended to commit the criminal act while traveling. The Ninth Circuit made clear in *Clark* that the only reason it did not address the non-commercial prong of section 2423(c) in that case was judicial restraint, not because of any implicit doubt about its Foreign Commerce Clause validity. *Clark*, 435 F.3d at 1110 n.16. This Court should hold that under *Clark*, Congress's regulation of non-commercial illicit sexual conduct by Americans who travel abroad is likewise within its Foreign Commerce Clause power.

**C.     Other Federal Courts Have Already Recognized Congress's Power to Regulate Non-Commercial Illicit Sexual Conduct.**

Persuasive authority from other jurisdictions has already rejected Hardeman's argument that the non-commercial prong of section 2423(c) violates the Foreign Commerce Clause. The Third Circuit recently addressed this issue in an unpublished opinion called *United States v.*

*Bianchi*, 386 Fed.Appx. 156, 2010 WL 2650357 (3rd Cir. 2010).  In that case, the American defendant traveled to various former Soviet-Bloc countries and had sex with young boys.  He challenged both the commercial and non-commercial prongs of section 2423(c) on Foreign Commerce Clause grounds.  *Id*. at 161.  With respect to the statute's commercial prong, the Third Circuit followed the Ninth Circuit's decision in *Clark*.  *Id*. at 161-62.  With respect to the statute's non-commercial prong, the Third Circuit also rejected the defendant's challenge, noting that he had failed to show why Congress would not have had a rational basis to believe that failing to regulate the non-commercial sexual abuse of minors by Americans in other countries would leave a "gaping hole" in a comprehensive statutory scheme directed at combating sex tourism.  *Id*. at 162.

　　　　A district court in Texas also upheld the non-commercial prong of the section 2423(c) against a Foreign Commerce Clause challenge, in *United States v. Martinez*, 599 F.Supp.2d 784, 802 (W.D. Tex. 2009).  There, the district court followed the Supreme Court's guidance in *Raich*, and examined the history and purpose for the sex tourism statutes.  *Id*. at 806.  Section 2423(c), the district court noted, was enacted as part of the PROTECT Act of 2003, which was intended to implement the "Optional Protocol" to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography.  That treaty, like the PROTECT Act, was "designed to combat the human suffering and economic evils of worldwide sex tourism and child prostitution."  *Id*. at 807-808.  The district court thus had "no difficulty concluding that Congress had a rational basis for believing that failure to regulate the non-commercial sexual abuse of minors 'would leave a gaping hole' in the PROTECT Act and its ability to regulate the commercial industry of child prostitution."  *Id*. at 808.

　　　　A third decision, this one by a district court in Delaware, has also upheld the non-commercial prong of section 2423(c) against a Foreign Commerce Clause challenge.  *United States v. Pendleton*, 2009 WL 330965, *4 (D. Del. 2009).  The *Pendleton* court largely followed the same line of reasoning as the other decisions discussed above, noting  – like the Ninth Circuit in *Clark* – that travel through channels of foreign commerce satisfied the Foreign Commerce Clause, even if the crime at issue took place after the travel had ended.  *Id*.

This commonsense conclusions reached by these federal courts apply with equal force to Hardeman's challenge. If Congress intended the PROTECT Act to impose stiff penalties on Americans who engage in sex tourism, why would Congress construct a statutory scheme that penalized Americans who travel abroad and rape children after giving them pieces of candy, but ignored Americans who engaged in identical conduct but without the candy? And what purpose would the statutory scheme serve if prosecutors were forced to tease out which child rapes were "on account of" gifts or payments within the meaning of 18 U.S.C. § 1591(e)(3), and which were not? Congress had a rational basis to conclude that a comprehensive punitive scheme addressing sex tourism, which in the aggregate affects foreign commerce in undeniable ways – for example, through travel across borders, payments made to local hotels and restaurants and otherwise dispersed through local economies, and ultimately through payments to victims and their "handlers" for sex – would have to address all of the criminal sex acts that Americans committed overseas, not just those that involved commercial exchanges.

Hardeman attempts to ridicule these decisions as containing "astonishing non-sequiturs," "accelerating down the wrong track," propagating "nonsense upon stilts," and perpetrating "shocking" leaps of illogic. Hardeman's Motion at 14-15. But these attacks cannot negate the basic logic underlying this statutory scheme. International sex tourism is a global market that involves numerous commercial transactions of many types that occur in many countries, of which the payment for sex is only one example.[2] A sex tourist may pay a child for sex one day, and then rape him for free the next. To excise a single type of crime from the statutory scheme as free from congressional reach just because it did not involve a commercial exchange, would be more worthy of ridicule that the consistent, well-reasoned judicial opinions that Hardeman attacks.

---

[2] Numerous articles have described the growth of the sex tourism industry, which includes both a highly organized commercial market of sex tour operators, as well as individuals who travel on their own, seeking opportunities for illicit sexual conduct with minors. *See, e.g.*, Mark Orndorf, *The Secret World of Child Sex Tourism,* 28 Penn St. Int'l L. Rev. 789, 793 (Spring 2010); R. Barri Flowers, *The Sex Trade Industry's Worldwide Exploitation of Children*, 575 Annals Am. Acad. Pol. & Soc. Sci. 147 (2001).

The Court should find that Congress's regulation of non-commercial sex acts by American sex tourists traveling abroad is a rational part of a comprehensive national statutory scheme to combat child sex tourism and child prostitution, and that these crimes involve the use of channels of foreign commerce, substantially affect foreign commerce, and fall plainly within Congress's constitutional power to regulate foreign commerce.

### IV. THE NECESSARY AND PROPER CLAUSE ALSO SUPPORTS CONGRESS'S POWER TO PASS SECTION 2423(c) IN ITS ENTIRETY.

The United States' international treaty obligations provide another reason for Congress to pass a comprehensive anti-sex tourism statute. The Constitution gives the President the authority to enter into treaties with foreign nations, subject to ratification by the Senate. U.S. Const. Art. II, Sec. 2, cl. 2. Article VI, Clause 2 of the Constitution gives Congress the power to enact legislation that implements treaties under the "Necessary and Proper Clause." *Missouri v. Holland*, 252 U.S. 416, 432 (1920). A treaty cannot enhance the power of the federal government beyond that stated by the Constitution, and it cannot deprive citizens of rights guaranteed by the Constitution; but treaties can authorize Congress to legislate on "matters" which Congress might otherwise be unable to address. *Reid v. Covert*, 354 U.S. 1, 17-19 (1957); *United States v. Lara*, 541 U.S. 193, 201 (2004).

The district court in *Martinez* expressly recognized the United States international commitments relating to the sexual abuse and sexual exploitation of children, including the United States' commitment under the Optional Protocol. *Martinez*, 599 F.Supp.2d at 807-08. The Optional Protocol, which the United States Senate ratified on June 18, 2002, recognized that the signatory nations are "[d]eeply concerned at the widespread and continuing practice of sex tourism, to which children are especially vulnerable." Optional Protocol, Preamble, 148 Cong. Rec. S5717-01. While the Optional Protocol specifies that signatories must prohibit commercial sale of children, child prostitution, and child pornography, it more generally requires parties to the agreement to ensure that acts involving "sexual exploitation of the child" are "fully covered under its criminal or penal law, whether these offences are committed domestically or transnationally or on an individual or organized basis" and further specifies that "[e]ach State

1 Party shall make these offences punishable by appropriate penalties that take into account their
2 grave nature." Optional Protocol, Article III.  The Optional Protocol also recognized the need for
3 a "holistic approach" to eliminate the sexual exploitation of children.  Optional Protocol,
4 Preamble.

5     Section 2423(c) is consistent with these treaty obligations, whether the sex acts are
6 commercial or not.  *See United States v. Frank*, 486 F. Supp. 2d 1353, 1356-58 (S.D. Fl. 2007)
7 (finding Congress could enact Section 2423(c) under the Necessary and Proper Clause to
8 implement the Optional Protocol); *Pendleton,* 2009 WL 330965 (finding that 2423(c) and (f)(1)
9 are "necessary and proper" to the implementation of the United States' international treaty
10 obligations); *Martinez*, 599 F.Supp.2d at 808 (same).

11     The Court should find that the Necessary and Proper Clause provides an alternate source
12 for Congress's power to enact both the commercial and non-commercial prongs of section
13 2423(c).

## CONCLUSION

15     For the reasons set forth above, the Court should find that section 2423(c) passes
16 constitutional muster and deny Hardeman's motion to dismiss Count One of the Indictment.

18 DATED: May 10, 2011        Respectfully submitted,

19           MELINDA HAAG
          United States Attorney

21           /s/

22           OWEN P. MARTIKAN
          Assistant United States Attorney

25           /s/

26           ANITHA S. IBRAHIM
          Trial Attorney, U.S. Department of Justice

CR 10-0859 RS        10