BARRY J. PORTMAN
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant HARDEMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 10-0859 RS |
| Plaintiff, | ) ) | REPLY ON MOTION TO DISMISS |
| | ) | COUNT ONE OF THE INDICTMENT |
| v. | ) ) | UNDER THE FOREIGN COMMERCE CLAUSE |
| GARY HARDEMAN, | ) | |
| | ) | Honorable Richard Seeborg |
| Defendant. | ) ) | June 14, 2011
2:30 p.m. |

## ARGUMENT

The government's opposition to Defendant Gary Hardeman's motion to dismiss Count One of the indictment under the Foreign Commerce Clause fundamentally misapprehends the significance of the Ninth Circuit's decision in *United States v. Clark,* 435 F.3d 1100 (9th Cir. 2006), and the limitations of the Supreme Court precedents it cites regarding the authority of Congress to regulate non-commercial activity occurring wholly within a separate foreign nation.  *Clark* strongly suggests that the regulation of such activity under the "non-commercial prong" of 18 U.S.C. § 2423(c) exceeds the bounds of the Foreign Commerce Clause, and this Court should so hold here.

The government begins by taking out of context the broad language of the Supreme Court in *Japan Line v. Los Angeles,* 441 U.S. 434 (1979), regarding the authority of Congress to regulate under the Foreign Commerce Clause as compared with the Interstate Commerce Clause.  *See* Gov. Opp. at 2.[1]  In that case, the Supreme Court struck down a state property tax applied to Japanese cargo containers shipped into California, explaining that "[a]lthough the Constitution, Art. I, § 8, cl. 3, grants Congress power to regulate commerce 'with foreign Nations' and 'among the several States' in parallel phrases, there is evidence that the Founders intended the scope of the foreign commerce power to be the greater." *Japan Line,* 441 U.S. at 448 (footnote omitted)).  However, in that case, and in other cases with similarly broad language, the Supreme Court was addressing the *inward looking* aspect of the Foreign Commerce Clause–that is, the regulation of foreign commerce as it affects the territory of the United States.  *See id.; see also Board of Trustees v. United States,* 289 U.S. 48, 56-57 (1933) (holding that the power of Congress to determine what articles may be imported into the United States, and the terms for their importation, "is exclusive and plenary").  The Supreme Court has never applied these statements of broad regulatory authority to the *outward*

---

[1] The government's misleading use of quotation marks suggests that it is quoting directly from that decision.  *See* Gov. Opp. at 2 (purporting to quote "*Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 n.13 (1979)")  However, footnote 13 of *Japan Line* does not include any of the text quoted by the government.  In fact, the supposedly quoted phrase "greater [than] the interstate commerce power" does not appear anywhere in that decision.  Nevertheless, the gist of the government's argument is intelligible.

REPLY ON MOTION TO DISMISS COUNT ONE
UNDER THE FOREIGN COMMERCE CLAUSE             - 1 -

*looking* aspect of the Foreign Commerce–that is, the effect of foreign commerce on other nations, particularly as to non-commercial conduct wholly occurring within the borders of a separate sovereign country. On the contrary, such an interpretation of the Foreign Commerce Clause, as urged here by the government, would turn the whole idea of national sovereignty on its head, by giving the United States more authority to regulate non-commercial activity occurring wholly within the borders of other similarly constituted nations than the governments of those nations have themselves, and concomitantly giving those nations more authority to regulate non-commercial activity in the United States than our own federal government.

Likewise, the Ninth Circuit cases purportedly cited by the government as demonstrating broad Congressional authority under the Foreign Commerce Clause to regulate non-commercial activity occurring wholly within another country are plainly inapposite. *See* Gov. Opp. at 3. Both the commercial aspect of § 2423(c) upheld in *Clark* and the child pornography statute upheld in *United States v. Thomas,* 893 F.2d 1066, 1069 (9th Cir. 1990), addressed the regulation of conduct exhibiting an "essential economic character."[2]

---

[2] In this initial section, the government also makes the "straw man" argument that the non-commercial prong of § 2423(c) does not violate "extraterritoriality and international law issues" or the "Due Process Clause." Gov. Opp. at 3. However, as is no doubt clear to the Court, the basis for Mr. Hardeman's motions is the Foreign Commerce Clause, not any of these other issues raised and dismissed by the government. In addition, contrary to the odd claim of the government, *see* Gov. Opp. at 3, both law review articles cited by Mr. Hardeman in his opening brief plainly conclude that the non-commercial prong of § 2423(c) violates the Foreign Commerce Clause. *See, e.g.,* Anthony J. Colangelo, The Foreign Commerce Clause, 96 Va. L. Rev. 949, 992 (2010). ("[W]hile Section 2423(b) can constitutionally stand on a channels theory, Section 2423(c) fails to obey both the nexus and foreign sovereignty limits on Congress's ability to regulate channels of foreign commerce with the United States."); *id.* at 1039-40 ("It is therefore unlikely, for example, that Congress could regulate noneconomic activity abroad under the Foreign Commerce Clause like the noncommercial sexual abuse of a minor proscribed under Section 2423(c).") (footnote omitted); *see also* Jeff Christensen, Notes & Comments, Congressional Power to Regulate Noncommercial Activity Overseas: Interstate Commerce Clause Precedent Indicates Constitutional Limitations on Foreign Commerce Clause Authority, Wash. L. Rev. 621, 640 (2006) (concluding that § 2423(c) "fails to satisfy the channels or instrumentalities prongs of the framework because the noncommercial sexual abuse of minors overseas occurs outside the channels of foreign commerce"); *id.* at 642 (concluding similarly that the noncommercial prong of § 2423(c) "fails to demonstrate a constitutionally tenable nexus with foreign commerce under *Clark* because the statute regulates activity that does not include an economic component") (footnote omitted).

Next the government argues that, in upholding the commercial prong of § 2423(c), the Ninth Circuit in *Clark* followed "the Supreme Court's broad reading of congressional power in *Gonzalez v. Raich,* 545 U.S. 17, 22 (2005)," which held that "Congress could regulate purely intrastate activity 'that is not itself "commercial," in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity.'" Gov. Opp. at 3-4. This argument is correct, as far as it goes. But the government ignores the fact that *Raich* upheld the Controlled Substances Act (CSA) under the "third category" of commerce regulation, regarding substantial *economic* effects, which is inapplicable here. *See Raich,* 545 U.S. at 17 ("Only the third category is implicated in the case at hand."). Along these lines, the application of *Raich* by the Ninth Circuit in *Clark* strongly suggests that the non-commercial prong of § 2423(c) is unconstitutional.

The Supreme Court in *Raich* begins by noting that the CSA is a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance." *Id.* at 13. Then, applying the third Commerce Clause category, *Raich* reaffirmed that "[o]ur case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17 (citations omitted). In particular, the *Raich* decision relies upon *Wickard v. Filburn,* 317 U.S. 111 (1942), in which the Court had held that Congress could regulate a farmer's production of wheat for his own consumption, even though it was "purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Id.* a 18. Accordingly, the Court in *Raich* held that, "Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA," and therefore, "as in *Wickard,* when it enacted comprehensive legislation to regulate the interstate market in a fungible commodity, Congress was acting well within its authority to 'make all Laws which shall be necessary and proper' to 'regulate Commerce . . . among the several States.'" *Id.* at 22.

In doing so, the *Raich* Court reaffirmed but distinguished its prior decision in *United States v. Morrison,* 529 U.S. 598, 607 (2000). *See Raich,* 545 U.S. at 25-26. In striking a key section of the Violence Against Women Act of 1994, proscribing any "crime of violence motivated by gender," as exceeding Congress' authority under the third Interstate Commerce Clause category, *Morrison* expressly "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617 (citing *Lopez,* 514 U.S. at 568). By contrast, *Raich* explained that, "[u]nlike those at issue in *Lopez* and *Morrison,* the activities regulated by the CSA are quintessentially economic." 545 U.S. at 25. "The CSA is a statute that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market. Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product." *Id.* at 26 (footnote omitted). As such, the Court explained that, "[b]ecause the CSA is a statute that directly regulates economic, commercial activity, our opinion in *Morrison* casts no doubt on its constitutionality." *Id.*

Finally, *Raich* held that limiting the challenged "activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place [those] activities beyond congressional reach" because the Supremacy Clause "unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Id.* at 27-29. Thus, the Court held the CSA was constitutional under the third Commerce Clause category because Congress, empowered to establish the supreme law of the land, enacted comprehensive national regulation of a distinctly commercial activity, unlike the noneconomic conduct at issue in *Morrison.*

The Ninth Circuit in *Clark* applies the test set forth by the Supreme Court in *Raich* in distinguishing *Morrison* to uphold the constitutionality of 18 U.S.C. § 2423(c) as affecting illicit commercial sexual conduct in foreign places, while at the same time strongly suggesting that the non-commercial prong of § 2423(c) at issue here would be unconstitutional. *See* 435 F.3d 1114-16.

///

Under this test, the Court here should dismiss Count One of the indictment charging Mr. Hardeman with illicit non-commercial sexual conduct in foreign places.

After canvassing the structure and history of the Commerce Clause, *Clark* states that it will analyze the commercial sexual conduct prong of § 2423(c) by "[t]aking a page from *Raich*." 435 F.3d at 1114. Specifically, looking to the text of § 2423(c) to discern whether it has a constitutionally tenable nexus with foreign commerce, the Ninth Circuit holds "that § 2423(c)'s combination of requiring travel in foreign commerce, coupled with engagement in a commercial transaction while abroad, implicate foreign commerce to a constitutionally adequate degree." *Id.* In doing so, *Clark* explains that the "essential economic character of the commercial sex acts regulated by § 2423(c) stands in contrast to the non-economic activities regulated by the statutes at issue in *Lopez* and *Morrison*." *Id.* at 1115 (citations omitted). Rather, "[l]ike the statute regulating illicit drugs at issue in *Raich,* the activity regulated by the commercial sex prong of § 2423(c) is 'quintessentially economic,' and thus falls within foreign trade and commerce." *Id.* (citation and footnote omitted).

The Ninth Circuit was careful in *Clark* to emphasize that it was limiting its "holding to § 2423(c)'s regulation of commercial sex acts" and that it was "not decid[ing] the constitutionality of § 2423(c) with respect to illicit sexual conduct covered by the non-commercial prong of the statute, such as sex acts accomplished by use of force or threat." *Id.* at 1110 & n.16 (citation omitted).[3] However, the unmistakable implication of the Ninth Circuit's reliance on the "the "essential economic character of the commercial sex acts regulated by § 2423(c)" to analogize to the statute upheld in *Raich,* and distinguish the statutes overruled in *Lopez* and *Morrison,* is that the non-

---

[3] Along these lines, the government strangely accuses Mr. Hardeman of "attempt[ing] to excise a 'non-commercial' component of 18 U.S.C. § 2423(c) from a statute that he otherwise concedes falls within Congress's Foreign Commerce Clause power." Gov. Opp. at 4 (citing *Raich*). On the contrary, it is the Ninth Circuit in *Clark* that held "the statute is plain on its face in dividing the definition of 'illicit sexual conduct' into two distinct, numbered prongs." *Clark,* 435 F.3d at 1110 n.16. As such, "the situation presented by § 2423(c) is distinct from challenges in which courts have carved out a discrete subset of conduct from a statute based on distinctions deduced from the statutory scheme." *Id.* (citing, inter alia, *Raich*).

REPLY ON MOTION TO DISMISS COUNT ONE
UNDER THE FOREIGN COMMERCE CLAUSE           - 5 -

commercial prong of the statute as indicted here against Mr. Hardeman exceeds Congress's authority under the Foreign Commerce Clause.[4]  Like the gender-motivated crimes of violence regulated by the provision of the Violence Against Women Act struck by *Morrison* in particular, the illicit sexual conduct regulated by the non-commercial prong of § 2423(c) is "not, in any sense of the phrase, economic activity." *Morrison,* 529 U.S. at 613.  Accordingly, unlike the "quintessentially economic" activity regulated by the CSA, Congress may not regulate non-commercial activity under § 2423(c) "based solely on that conduct's aggregate effect."

Nor can the non-commercial prong of § 2423(c) be saved by either of the other two categories of regulation regarding the channels of commerce and their instrumentalities.  Although this issue was necessarily left open by the Ninth Circuit in *Clark,* 435 F.3d at 1116, this Court should hold that the provision must stand or fall under the third Commerce Clause category.

The Supreme Court has long recognized that Congress has the authority "to keep the channels of interstate commerce free from immoral and injurious uses." *Caminetti v. United States,* 242 U.S. 470, 491 (1917) (upholding convictions under Mann Act for transporting women across state lines for immoral purposes).  However, for a criminal statute to be constitutional under the channels or instrumentalities categories, proof of "just crossing the state border is not enough"; rather, such criminal statutes must require the government to "prove that the crossing was made with the intent to

---

[4] The government simply "doth protest too much," William Shakespeare, Hamlet, act 3, sc. 2., that the "only reason" that the Ninth Circuit "did not address the non-commercial prong of section 2423(c)" in *Clark* "was judicial restraint, not because of any implicit doubt about its Foreign Commerce Clause validity." Gov. Opp. at 6. Rather, the government is left to rely on out-of-circuit district court and unpublished circuit court decisions, *see* Gov. Opp. at 6-9, that were, it is respectfully submitted, wrongly decided. *See* Def. Mot. at 13-15 (discussing cases). The government touts the "the basic logic" of these cases in upholding powerful tools to combat international "sex tourism." Gov. Opp. at 8. However, if logic were all that were required for a statute to be constitutional under the Commerce Clause, then there would be no need, for example, for the government to prove under 18 U.S.C. § 922(g) that a firearm possessed by a felon first crossed a state line. There is no logical reason why a firearm possessed by a felon is any less dangerous or less worthy of regulation simply because it was manufactured in-state. Such a distinction is not logical, but it is constitutionally required under our limited form of government. *See, e.g., Marbury v. Madison,* 1 Cranch 137 (1803) (Marshall, C.J.) ("The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written.").

engage in the proscribed conduct." *United States v. Gamache,* 156 F.3d 1, 8 (1st Cir. 1989) (upholding constitutionality of interstate commerce prong of § 2423(b)).  Otherwise, no criminal conduct would necessarily occur while the channels of commerce were actually being used.  Along these lines, as noted above, § 2423(b) criminalizes travel in interstate or foreign commerce for the purpose of engaging in illicit sexual conduct.  *See* 18 U.S.C. § 2423(b).  To be found guilty of this offense, the government must prove that the defendant had the intent to engage in the illicit sexual conduct at the time that he traveled in foreign commerce.  *See id.*  For this reason, § 2423(b) and statutes like it are constitutional under the first and second Foreign Commerce Clause categories. *See, e.g., United States v. Bredimus,* 352 F.3d 200, 205-06 (5th Cir. 2003) (upholding constitutionality of foreign commerce prong of § 2423(b) under the "channels of commerce" category); *see also United States v. Cummings,* 281 F.3d 1046, 1049 & n.2 (9th Cir. 2002) (upholding constitutionality of statute criminalizing the removal of a child from the United States "with intent to obstruct the lawful exercise of parental rights" under the "channels of foreign commerce" category).  By contrast, § 2423(c) was deliberately enacted without any such intent requirement.  Accordingly, it cannot meet the constitutional requirements of the channels or instrumentalities Commerce Clause categories.

Finally, the government argues that the "international treaty obligations" of the United States under "the Optional Protocol" make the non-commercial prong of § 2423(c) constitutional under the Necessary and Proper Clause.  Gov. Opp. at 9-10.  However, the language of the treaty quoted by the government does not say anything about individual signatory States being authorized to unilaterally prosecute non-commercial crimes wholly occurring in separate sovereign nations, whether signatory States or not.  Accordingly, the non-commercial prong of § 2423(c) cannot be constitutional under the government's Necessary and Proper theory.[5]

---

[5] *Cf. United States v. Frank,* 486 F. Supp.2d 1353, 1354-55 (S.D. Fla. 2007) (upholding *commercial* prong of § 2423(c) under Necessary and Proper Clause).  The reasoning of the out-of-circuit district court cases relied upon by the government on this point is particularly questionable in light of the Ninth Circuit's analysis in *Clark.  See, e.g., United States v. Martinez,* 599 F. Supp.2d

REPLY ON MOTION TO DISMISS COUNT ONE
UNDER THE FOREIGN COMMERCE CLAUSE           - 7 -

## CONCLUSION

For the aforementioned reasons, and those set out more fully in Mr. Hardeman's opening memorandum, the Court should dismiss Count One of the indictment under the Foreign Commerce Clause.

Dated:  May 24, 2011

>　　　　　　　　　　　　　　　　　Respectfully submitted,
>
>　　　　　　　　　　　　　　　　　BARRY J. PORTMAN
>　　　　　　　　　　　　　　　　　Federal Public Defender
>
>　　　　　　　　　　　　　　　　　　　　/s/
>
>　　　　　　　　　　　　　　　　　DANIEL P. BLANK
>　　　　　　　　　　　　　　　　　Assistant Federal Public Defender

---

784, 808 (W.D. Tex. 2009) ("Similar to *Raich,* there is a rational basis for concluding that leaving non-commercial sex with minors outside of federal control *could affect the price for child prostitution services and other market conditions in the child prostitution industry.*") (emphasis added); *see also United States v. Pendleton,* 2009 WL 330965 (D. Del. Feb. 11, 2009) at *4 (relying, inter alia, on *Frank* without distinguishing between the commercial and non-commercial prongs of § 2423(c)).