STEVEN G. KALAR
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant HARDEMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 10-0859 RS |
| | ) | |
| Plaintiff, | ) | MOTION IN LIMINE TO EXCLUDE |
| | ) | GOVERNMENT'S PROPOSED |
| v. | ) | PSYCHIATRIC EXPERT OPINION |
| | ) | TESTIMONY |
| GARY HARDEMAN, | ) | |
| | ) | Honorable Richard Seeborg |
| Defendant. | ) | July 10, 2013 |
| _____ | ) | 2:00 p.m. |

LIMINE TO EXCLUDE EXPERTS

**INTRODUCTION**

The government has not adequately complied with the mandatory notice requirements of Federal Rule of Criminal Procedure 16 with respect to its proposed psychiatric expert witnesses. Nor has the government met the substantive requirements for admission of that testimony under Federal Rule of Evidence 702. On the current record, all testimony by the government's proposed psychiatric expert witnesses should be excluded.

**ARGUMENT**

**I.    GOVERNMENT HAS FAILED TO COMPLY WITH NOTICE REQUIREMENTS**

The government has not adequately complied with the notice and disclosure requirements of Federal Rule of Criminal Procedure 16 for its psychiatric expert witnesses as to each proposed area of testimony. The Court set a deadline of June 12, 2013, for completion of discovery under Rule 16. Accordingly, the Court should exclude expert testimony from trial as to the topic for which adequate disclosure has not been produced.

Rule 16 requires the government to disclose a "written summary of the [expert] testimony that the government intends to use." F.R.Cr.P. 16(a)(1)(E). This written summary "shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." *Id.* The Court's order setting interim pretrial dates, pursuant to the stipulation of the parties, specifically addressed "expert disclosures" in setting a "cut-off date" of June 12, 2013, for any outstanding discovery and evidentiary disclosures. *See* Stipulation and Order (Docket #125) (filed Mar. 1, 2013).

On June 12, 2013, the government gave notice of two psychiatric expert witnesses, Dr. Kuo and Dr. Sikorski. *See* Declaration of Daniel P. Blank (filed concurrently with this memorandum) [hereinafter "Blank Decl."] ¶ 2 & Att. A. The government's letter addresses two areas of proposed testimony for the identified psychiatric expert witnesses.[1] The first area

---

[1] The government provided the same summary as to each proposed psychiatric expert witness. *See* Blank Decl. ¶ 2. Two such experts testifying on identical topics would be needlessly cumulative in violation of Federal Rule of Evidence 403. However, government counsel subsequently advised undersigned counsel that the government would only be calling one of the two identified psychiatric experts at trial. *See id.* Therefore, no objection to the

LIMINE TO EXCLUDE EXPERTS            - 1 -

1  involves delayed disclosure of sexual abuse by children.  The government's summary on this
2  topic meets the minimum procedural requirements of Rule 16 because it identifies the "opinions"
3  and "bases and reasons for those opinions."  (However, the substantive nature of this proposed
4  testimony raises other concerns, addressed in Part II below.)  Specifically, that identified opinion
5  is that "child victims of sexual abuse may delay their disclosure of some details of the abuse
6  because of their embarrassment over the event, or because they dissociate from it." *Id.* ¶ 3.  The
7  basis and reason for this opinion is identified as being that the witnesses "have experienced this
8  phenomenon in their clinical experience with victims of child sexual abuse, and have taken note
9  of it in the relevant medical literature." *Id.*

10        By contrast, the summary of the second area of proposed testimony does not meet the
11  minimum procedural requirements of Rule 16 because it does not identify any particular
12  "opinion" let alone the "bases and reasons" for that opinion.  It states in its entirety:

> Drs. Kuo and Sikorski will also testify in rebuttal to any defense testimony about the victim's mental health diagnoses, current or previous, and whether any mental condition impaired the victim's ability to perceive or remember what happened to her when she was in the defendant's company.  Drs. Kuo and Sikorski may also testify to these issues during the government's case in chief, but only if the victim's mental health is raised by the defense, whether during cross-examination or some other form of impeachment.

17  *Id.* ¶ 4.  The government's summary is thus entirely bereft of any notice as to what the actual
18  opinion of the expert might be here.  Will the expert testify that the prior diagnoses of mental
19  illness are unreliable?  Will the expert testify that the particular type of previously diagnosed
20  mental illness does not affect the ability to perceive or remember?  Will the expert testify that the
21  alleged victim has grown out of her previously diagnosed mental illness?  One can only guess.
22  Nor is there any hint of what the basis or reason for any such opinion might be.  The government
23  has the same information as the defense regarding the alleged victim's prior mental health
24  diagnoses, and knows full well that the defense intends to raise this issue at trial.  We can
25  therefore expect that the government will seek to introduce some expert opinion on this topic in
26  its case in chief, but the defense has been given no meaningful notice of what that opinion and its

---

28  proposed testimony as being cumulative is being raised at this time.

LIMINE TO EXCLUDE EXPERTS                - 2 -

bases or reasons might be, and no possible way to prepare for it.  There is no imaginable justification for the government's failure to comply with its requirement for timely disclosure of this information.  Accordingly, some remedy is required.

The remedies for failure to comply with the notice and disclosure requirements of Rule 16 include an order compelling disclosure and granting a reasonable continuance, or an order prohibiting the party from introducing the evidence.  *See* F.R.Cr.P. 16(d)(2).  Mr. Hardeman objects to any continuance, and instead moves the Court to exclude.  If no continuance in the trial date is ordered, the Court should exclude all testimony on this topic by the government's witnesses, at least in its case in chief.  Alternatively, if a continuance is ordered over Mr. Hardeman's objection, the Court should order disclosure of the required summary forthwith.

## II. DELAYED DISCLOSURE TESTIMONY REQUIRES *DAUBERT* TEST

The district courts have an important gatekeeping role regarding expert opinion testimony under Federal Rule of Evidence 702.  Apart from its procedural obligations for notice under Rule 16, the government has failed to meet its substantive burden for admission of expert testimony under Rule 702 as to any proposed area of testimony by its noticed psychiatric witnesses.  Where there has not been adequate notice for an area of testimony, the Court cannot meaningfully exercise its gatekeeping authority.  Moreover, as to the proposed testimony regarding delayed disclosure of child sexual abuse, the Court should exclude the proposed testimony under *Daubert,* at least in the absence of a hearing outside the presence of the jury where the government can be held to its substantive burden of demonstrating admissibility.

### A. Gatekeeping Is Required under *Daubert*

Federal Rule of Evidence 702 imposes a "gatekeeping" obligation on the district courts with respect to expert testimony to ensure that it "is not only relevant, but reliable."  *Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993).  Factors for the district courts to consider include:  1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community.  *See id.* at 592-94.

The Ninth Circuit has recognized that the *Daubert* factors were not intended to be exhaustive nor to apply in every case. *See, e.g.*, *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000). Nevertheless, the district court must apply all relevant factors in performing its function as gatekeeper. At a minimum, the district court must make the following determinations before permitting expert testimony: 1) whether the opinion is based on "scientific, technical or other specialized knowledge"; 2) whether the expert's opinion would "assist the trier of fact in understanding the evidence or determining a fact in issue"; 3) whether the expert has appropriate qualifications, *i.e.,* "some specialized knowledge, skill, experience, training, or education on that subject matter"; 4) whether the testimony is "relevant and reliable"; 5) whether the methodology or technique the expert uses fits the conclusions (although the expert's credibility is reserved for the jury); and 5) whether its probative value is "substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time." *Id.* Unless the government complies with these requirements, expert testimony is inadmissible.

Here, the government does not provide any methodology utilized by the noticed psychiatric expert witnesses in support of the proposed testimony that "child victims of sexual abuse may delay their disclosure of some details of the abuse because of their embarrassment over the event, or because they dissociate from it" other than stating that "they have experienced this phenomenon in their clinical experience with victims of child sexual abuse, and have taken note of it in the relevant medical literature." In particular, it is unclear what means were used to collect and evaluate data from their own clinical practices to determine whether the additional information provided by the children as time went on was more rather than less reliable, and what mathematical tools were used to determine if any conclusions were statistically significant. Accordingly, prior to permitting any testimony on this area, the Court should hold a *Daubert* hearing outside the presence of the jury so that the Court can meaningfully exercise its gatekeeping role in determining whether such evidence may be admitted.

### B.     *Daubert* Applies to "Specialized Knowledge" Testimony

In *United States v. Bighead*, the Ninth Circuit applied a narrow reading of *Daubert* in the context of expert testimony regarding "delayed disclosure" by children of sexual abuse, to hold

LIMINE TO EXCLUDE EXPERTS              - 4 -

that the "tests for the admissibility of expert scientific testimony do not require exclusion of expert testimony that involves specialized knowledge rather than scientific theory." 128 F.3d 1329, 1330 (9th Cir. 1997). However, the Supreme Court thereafter clarified that the gatekeeping analysis articulated by the Court in *Daubert* "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' or 'other specialized knowledge.'" *See Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting Fed. R. Evid. 702). As a result, the *Bighead* court's rejection of *Daubert* as applied to specialized knowledge testimony, such as that regarding delayed disclosure, is no longer good law.

The Court in *Kumho Tire* explained that the function of the *Daubert* analysis "is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Accordingly, when an expert purports to testify on the basis of personal knowledge, the court must be satisfied that "the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.* at 149 (citation and internal quotation marks omitted).

The *Kumho Tire* Court took pains to discredit the view that the *Daubert* gatekeeping analysis did not apply to expert testimony based on "skill- or experience-based observations." *Id.* at 151. To the contrary, the Court explained that

> [i]n certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

*Id.* The issue is not whether "an expert might draw a conclusion from a set of observations based on extensive and specialized experience"; clearly, he might. *Id.* at 156. The issue is whether that conclusion is sufficiently reliable to be admitted at trial.

In this regard, *Kumho Tire* was careful to distinguish between the *qualifications* of an expert and that expert's *methodology*. While both qualifications and methodology are germane

LIMINE TO EXCLUDE EXPERTS             - 5 -

to the gatekeeping analysis, qualifications alone will not render expert testimony admissible if the expert's methodology is unclear or unacceptable. In *Kumho Tire* itself, there was never any question concerning the qualifications of the plaintiff's expert, who had a master's degree in mechanical engineering, ten years of experience at a tire company, and significant experience as an expert in the field of manufacturing defects. *See id.* at 144-45. Nonetheless, the district court excluded his testimony and the Supreme Court affirmed "because, despite those qualifications, [the court] initially doubted, and then found unreliable, the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis." *Id.* at 153. As such, *Kumho Tire* teaches that experience alone does not make an expert. Before a witness is qualified to give an expert opinion, the trial court must be satisfied that the opinion is based on a reliable methodology.

In sum, *Kumho Tire*'s central holding is that professional experience alone does not render a person qualified to give expert testimony. This Court must still evaluate the expert's methodology, for "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157 (quoting *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also* Fed. R. Evid. 702, Adv. Comm. Notes to 2000 Amendments ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'").

Here, the Court cannot assess Dr. Kuo or Dr. Sikorski's methodology under the *Daubert* factors because the government does not describe their methodology. The government's summary simply states that these experts will testify that "child victims of sexual abuse may delay their disclosure of some details of the abuse . . . ." and about whether alleged victim's "mental health diagnoses . . . impaired the victim's ability to perceive or remember what happened to her when she was in the defendant's company." Blank Decl. ¶¶ 3-4. For the first area of expert testimony – regarding delayed disclosure – the government refers to the "opinions" but does not give enough information about the methodology used to reach these opinions for the court to determine whether such methodology is reliable. *See id.* ¶ 3. For the second area – regarding mental health diagnosis – the government's description of the experts'

opinion or methodology is completely absent. *See id.* ¶ 4.  Given the lack of specificity provided by the government to justify this questionable testimony, the expert witnesses should be excluded from trial. At the very least, the Court should perform its gatekeeping function and hold a *Daubert* hearing to determine the reliability of the expert opinions and methodology.

The Supreme Court in *Kumho Tire* expressly approved of the application of *Daubert* factors to assess the reliability of expert testimony based on personal knowledge or experience. These factors include:

> –Whether a "theory or technique . . . can be (and has been) tested";
> –Whether it "has been subjected to peer review and publication";
> –Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and
> –Whether the theory or technique enjoys "'general acceptance'" within a "'relevant scientific community.'"

*Kumho Tire*, 526 U.S. at 149-50 (quoting *Daubert,* 509 U.S. at 592-94).

Application of these factors to Dr. Kuo and Dr. Sikorski's purported opinions leaves no doubt that the opinions require a hearing to determine reliability under *Daubert* and Federal Rule of Evidence 702.  The government's summary refers to the witness' "clinical experience with victims of child abuse," but the government has not indicated whether such experience is based on reliable experiments, or whether they involved subjects sufficiently similar to this alleged victim to be relevant.  Such purported specialized knowledge triggers one of the foremost dangers associated with expert testimony:  it "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not be Amended*, 138 F.R.D. 631, 632 (1991)).  Moreover, the government has not even attempted to establish that a comparison of the results of these examinations to the present case constitutes a "theory or technique" that is testable, subject to peer review, subject to uniform standards, or generally accepted by the relevant community.

Dr. Kuo and Dr. Sitorski's own methodology, whatever it may be, must undergo a *Daubert* analysis in order to determine whether it is sufficiently reliable and not overly confusing or prejudicial.  Without such a hearing, it will be impossible for the court to fulfill its

LIMINE TO EXCLUDE EXPERTS                              - 7 -

1 gatekeeping function to determine whether the proffered expert testimony has a "reliable basis in
2 the knowledge and experience of [the] discipline." *Kumho Tire*, 526 U.S. at 149 (quoting
3 *Daubert*, 509 U.S. at 592). Unless determined to be sufficiently reliable, and not unduly
4 confusing or prejudicial, the government's proposed psychiatric expert testimony should be
5 excluded from trial.

**III.   COURT SHOULD PRECLUDE EXPERT TESTIMONY BY CASE AGENT**

The Ninth Circuit has long recognized the serious risk of prejudice posed by any type of opinion testimony, even if otherwise legitimate, from law enforcement fact witnesses. Here, the government has not noticed its case agent, ICE Special Agent Jason Barry, as an expert witness. *See* Blank Decl. ¶ 5. However, in a search warrant affidavit and in his grand jury testimony, Agent Barry offered a psychiatric opinion supposedly based upon his experience as a law enforcement agent that is similar to the proposed expert testimony discussed above regarding delayed disclosure of child sexual abuse. *See id.* Therefore, out of an abundance of caution, Mr. Hardeman moves the Court to preclude such expert testimony by Agent Barry.

The objections to psychiatric expert testimony by Agent Barry include the previously addressed lack of procedural notice under Rule 16, and substantive inadmissibility under *Daubert*. Moreover, the Ninth Circuit has additionally cautioned that "a trial court should not routinely admit this type of opinion testimony without carefully weighing the testimony's probative value against its possible prejudicial effect." *United States v. Gutierrez,* 995 F.2d 169, 172 (9th Cir. 1993). The *Gutierrez* court went on to explain: "This weighing is particularly important with the expert testimony of a law enforcement, which often carries an aura of special reliability and trustworthiness." *Id.* (citation and internal quotation marks omitted).[2] Thus, the

---

[2] Numerous other courts have similarly recognized the problems of undue prejudice and confusion raised by opinion testimony from law enforcement fact witnesses. For example, the Seventh Circuit has explained that "if the expert witness was also an eyewitness or otherwise involved in the defendant's arrest, there is a greater danger of unfair prejudice." *United States v. Doe,* 149 F.3d 634, 638 (7th Cir. 1998). "This dual role may confuse the jury, which may not understand its own function in evaluating the evidence." *Id.* (citations omitted); *see also United States v. Malcolm Earl Thomas,* 74 F.3d 676, 682 (6th Cir. 1996) ("Thomas correctly points out that when a police officer testifies in two different capacities in the same case, there is a

LIMINE TO EXCLUDE EXPERTS             - 8 -

Court should preclude any psychiatric expert testimony by Agent Barry or any other lay or law enforcement witness not noticed as an expert by the government.

**CONCLUSION**

For the aforementioned reasons, the Court should exclude the government's proposed psychiatric expert testimony.[3]

Dated:  June 26, 2013

                              Respectfully submitted,

                              STEVEN G. KALAR
                              Federal Public Defender

                              /s/
                              _____
                              DANIEL P. BLANK
                              Assistant Federal Public Defender

---

significant risk that the jury will be confused by the officer's dual role."). Numerous other courts have reversed convictions based upon prejudicial expert opinion testimony by law enforcement witnesses.  *See, e.g., United States v. Doe,* 903 F.2d 16, 19 (D.C. Cir. 1990) (reversing conviction due to improper admission of law enforcement expert testimony, noting that "'there is often an inherent danger with expert testimony unduly biasing the jury "[b]ecause of its aura of special reliability and trust[worthiness]"'") (quoting *United States v. Anderson,* 851 F.2d 384, 393 (D.C. Cir. 1988); *United States v. Green,* 548 F.2d 1261, 1268-70 (6th Cir. 1977) (reversing conviction due to admission of prejudicial opinion testimony regarding drug trafficking by law enforcement witness lacking in probative value); *see also State v. Baskerville,* 735 A.2d 39, 48-50 (N.J.App. 1999) (reversing conviction due to prejudicial drug opinion testimony by eyewitness law enforcement officers).

[3]  Mr. Hardeman separately moves in limine under Federal Rule 404(b) of Evidence to exclude evidence of the search of his laptop computer and other electronic media.  If granted, no testimony from the government's proposed computer expert would be needed.

LIMINE TO EXCLUDE EXPERTS                - 9 -