STEVEN G. KALAR
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant HARDEMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GARY HARDEMAN, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 10-0859 RS <br><br> MOTION IN LIMINE TO EXCLUDE ASPECTS OF DEFENDANT'S CUSTODIAL INTERVIEWS <br><br> Honorable Richard Seeborg <br> July 10, 2013 <br> 2:00 p.m. |

LIMINE TO EXCLUDE INTERVIEWS

**INTRODUCTION**

Defendant Gary Hardeman respectfully moves the Court in limine to exclude from trial under Federal Rule of Evidence 403 and the Due Process Clause some aspects of his custodial interviews by ICE agents in November 2008.  Specifically, Mr. Hardeman moves to exclude:  (1) the fact that the interviews occurred in jail, and the charges on which he was arrested or suspected; (2) statements regarding his purpose or intent in traveling to Mexico; (3) statements regarding his involvement with a school and his use of a computer; and (4) statements invoking his *Miranda* rights, and his demeanor in doing so.[1]

**BACKGROUND**

Mr. Hardeman was twice interviewed in November 2008 by ICE agents at the San Mateo County jail in Redwood City following his arrest at the San Francisco International Airport on state charges.  *See* Declaration of Daniel P. Blank (filed concurrently with this memorandum) [hereinafter "Blank Decl."] ¶ 2 & Att. A-B.  First, on November 3, Mr. Hardeman was interviewed by Agents Scheffel and Kraja.  *See id.*  Then, on November 5, Mr. Hardeman was interviewed by Agents Barry and Scheffel.  *See id.*  Prior to each interview, the agents obtained a valid *Miranda* waiver from Mr. Hardeman.  *See id.*  However, during the course of each interview, Mr. Hardeman reached a point where he invoked his *Miranda* rights by expressly declining to answer any further questions regarding the alleged victim in the current prosecution.  *See id.*  According to the agents, Mr. Hardeman was "very reserved" when he declined to answer any further questions on that topic.  *See id.*

**ARGUMENT**

Mr. Hardeman does not dispute that the federal agents obtained a valid *Miranda* waiver before his custodial interviews in November 2008.  As a result, the statements made by Mr. Hardeman during those interviews are generally not inadmissible against him at trial as a constitutional matter.  However, certain aspects of those interviews are inadmissible under the

---

[1] Mr. Hardeman separately moves the Court to exclude all evidence of prior bad acts under Rule 404(b).  To the extent that any of these areas of questioning could be considered bad acts, Mr. Hardeman similarly moves the Court to exclude them under Rule 404(b).

LIMINE TO EXCLUDE INTERVIEWS          - 1 -

balancing test of Rule 403 and the Due Process Clause and should therefore be excluded from trial.

## I. EXCLUDE FACT THAT INTERVIEW OCCURRED AT JAIL AND CHARGES

Mr. Hardeman's custodial interviews following his arrest at the airport on November 3, 2008, occurred while he was in custody at the county jail on state charges of (a) failing to register as a sex offender, which is still being litigated in state court, and (b) possessing allegedly fraudulent documents, which was soon thereafter dismissed. *See* Blank Decl. ¶ 3. Mr. Hardeman was suspected by the federal agents who interviewed him of violating 18 U.S.C. § 2250, the federal sex offender registration statute. *See id.* Mr. Hardeman was promptly charged with violating § 2250 on November 7, 2008. *See id.* However, that indictment was dismissed with prejudice on February 5, 2009. *See id.*

The fact that Mr. Hardeman voluntary agreed to speak to the agents is of course admissible at trial on the current federal charges against him. However, the fact that the interviews occurred at the county jail while Mr. Hardeman was being detained on different charges, which are either still being litigated or have been dismissed, is both irrelevant and prejudicial. Accordingly, these facts should be excluded from trial under Rule 403.[2]

## II. EXCLUDE STATEMENT REGARDING PURPOSE FOR MEXICO TRAVEL

During the November 2008 custodial interviews, Mr. Hardeman was repeatedly asked questions regarding his general purpose in regularly traveling to Mexico. *See* Blank Decl. ¶ 4 & Att. A-B. Mr. Hardeman stated that his purpose was to visit his daughter and her mother, who are Mexican citizens living in Mexico City. *See id.* However, Mr. Hardeman is also alleged to

---

[2] Mr. Hardeman has separately moved the Court in limine to bifurcate the trial on the two charges against him: (1) illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c); and (2) committing the offense charged in Count One while under a duty to register as a sex offender in violation of 18 U.S.C. § 2260A. As part of that filing, Mr. Hardeman specifically moves the Court to exclude from the first phase of such a bifurcated trial addressing the § 2423(c) count, among other things, all statements regarding his registration requirement that he may have made during these custodial interviews in November 2008. At a minimum, the Court should exclude the fact that these custodial interviews occurred in jail, and the registration-related charges on which he was then being detained, from the first phase of such a bifurcated trial addressing the § 2423(c) count.

have stated that "he likes visiting Mexico because, 'well let me be blunt, I just prefer Latin women.'" *Id.* ¶ 4 & Att. A.  Mr. Hardeman is also alleged to have stated:  "Whatever happens in Mexico, stays in Mexico.  That's why I go there." *Id.* ¶ 4 & Att. B.  Pursuant to this Court's prior ruling on Mr. Hardeman's pretrial motion to dismiss the indictment due to prejudicial pretrial delay, as well as Rule 403, these alleged statements should be excluded from trial as irrelevant and prejudicial.

Mr. Hardeman previously moved the Court to dismiss the indictment against him due to prejudicial pretrial delay on the grounds that, among other things, the delay deprived him of important witnesses who would have testified as to his innocent purpose in visiting Mexico. *See* Motion (Docket #126) (filed Mar. 5, 2013) at 21.  In opposing that motion, the government made the following argument:

> Hardeman's only new claim of prejudice is that his father died while the appeal was pending, and that his mother has become incompetent to testify.  Hardeman's Motion at 21. Hardeman claims that they would have testified that his **purpose in traveling to Mexico** was innocent. *Id*.  But **this purported testimony is irrelevant**:  the crime with which Hardeman was charged does not require pre-existing specific intent.  Unlike 18 U.S.C. § 2423(b), which criminalizes travel with the intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(c) criminalizes only the act of engaging in illicit sexual conduct in foreign places. Hardeman's parents would have had nothing to add to his defense, even if they could have testified as he predicts they would have.

Gov. Opp. (Docket #145) (filed Mar. 26, 2013) at 9 (emphasis added).  Thereafter, in denying Mr. Hardeman's motion to dismiss due to prejudicial pretrial delay, the Court specifically noted along these same lines: "The **relevance of the proposed testimony** [as to Mr. Hardeman's purpose in traveling to Mexico] **is tangential at best**, given the crime for which the defendant has been charged does not require the government to prove any motivation or intent whatsoever." Order (Docket #157) (filed Apr. 26, 2013) at 3 (emphasis added).

Thus, the government has already argued that testimony about Mr. Hardeman's purpose in traveling to Mexico is "irrelevant."  Similarly, a prominent basis cited by the Court for denying Mr. Hardeman's motion to dismiss the indictment was that the relevance of such testimony "is tangential at best."  If the topic is irrelevant for defense witnesses, fundamental fairness demands that it must also be irrelevant for government witnesses.  Moreover, the undue prejudice from the particular statements Mr. Hardeman is alleged to have made on this topic is

LIMINE TO EXCLUDE INTERVIEWS            - 3 -

obvious and undeniable. Nor is there any inherent connection between having a preference for Latina "women" and the charge of forcibly raping a 13 year-old child. Accordingly, the Court should exclude testimony by government witnesses on this same topic under Rule 403.

### III. EXCLUDE STATEMENTS REGARDING SCHOOL AND A COMPUTER

During the November 5 custodial interview, Mr. Hardeman was questioned regarding his access to computers and any recent visit to schools. *See* Blank Decl. ¶ 5 & Att. B. Mr. Hardeman has separately moved the Court to exclude the evidence obtained from Mr. Hardeman's laptop computer. For the same reasons, any statements about computers should also be excluded. There is no apparent relevance to the questioning about schools. Moreover, the prejudicial and potentially confusing inference is that there was reason to believe that Mr. Hardeman was loitering at schools with some prurient purpose. Accordingly, these statements should be excluded under Rule 403.

### IV. EXCLUDE STATEMENTS AND DEMEANOR WHEN INVOKING *MIRANDA*

Finally, Mr. Hardeman moves the Court under the Due Process Clause and Rule 403 to exclude his statements and demeanor upon invoking his *Miranda* rights. As noted above, during both of the custodial interviews in November 2008, Mr. Hardeman initially waived his *Miranda* rights and answered some questions, but then subsequently invoked those rights by indicating that he would not answer any further questions about the girl who is the alleged victim in the present case. According to the interviewing agents, Mr. Hardeman was nervous or "reserved" when he invoked his rights. Under long-standing principles, evidence of Mr. Hardeman's statements and demeanor upon invoking his *Miranda* rights is not admissible against him at trial. As a result, the Court should exclude it.

As recently reaffirmed by the Ninth Circuit, "[t]he Supreme Court has clearly established that, after receiving *Miranda* warnings, a suspect may invoke his right to silence at any time during questioning and that silence cannot be used against him, even for impeachment." *Hurd v. Terhune,* 619 F.3d 1080, 1087 (9th Cir. 2010) (citing *Miranda v. Arizona,* 384 U.S. 436, 473-74 (1966), and *Doyle v. Ohio,* 426 U.S. 610, 618-19 (1976)); *see also Leavitt v. Arave,* 383 F.3d 809, 827 (9th Cir. 2004) ("A defendant who has received *Miranda* warnings can, thereafter,


remain silent without running the risk that the prosecutor will comment upon that fact.") (citing *Doyle*). That protection is rooted in the Due Process Clause. *See, e.g., Salinas v. Texas,* 2013 WL 2922119 (U.S. June 17, 2013) at *7 n.3 (noting that "[p]etitioner is correct that *due process* prohibits prosecutors from pointing to the fact that a defendant was silent after the heard *Miranda* warnings") (emphasis in original) (citing *Doyle*).

Moreover, a "suspect may remain selectively silent by answering some questions and then refusing to answer others without taking the risk that his silence may be used against him at trial." *Hurd,* 619 F.3d at 1087 (citing *Miranda,* 384 U.S. at 473-74) (footnote omitted). In fact, a defendant's selective invocation of his *Miranda* rights by remaining silent as to certain topics need not be as affirmative and unambiguous as that required for all interrogation to cease:

> [*Berguis v. Thompkins,* 560 U.S. 370 (2010),] makes clear that a criminal defendant must affirmatively and unambiguously invoke his right to remain silent if he wishes to cut off police interrogation. When a suspect remains "largely silent" in response to officers' questions, the interrogation does not automatically have to cease. At the same time, when a defendant remains silent or refuses to answer a question posed by police, that silence or refusal is inadmissible. As the Court held in *Doyle,* a defendant's silence in response to a question is ambiguous because it may be no more than a reliance on the right to silence. That silence may not require police to end their interrogation, but it also does not allow prosecutors to use silence as affirmative evidence of guilt at trial. *Thompkins* stands for the proposition that a voluntary confession should not be suppressed just because a defendant has refrained from answering other questions. It does not alter the fundamental principle that a suspect's silence in the face of questioning cannot be used as evidence against him at trial, whether that silence would constitute a valid invocation of the "right to cut off questioning" or not.

*Id.* at 1088 (citations omitted).

Finally, evidence of a defendant's demeanor upon invoking his right to silence is, under the principles of *Doyle* and *Miranda,* just as inadmissible at trial as the silence itself:

> Whether the government argues that a defendant remained silent or describes the defendant's state of silence, the practical effect is the same–the defendant's right to remain silent is used against him at trial. To hold otherwise would circumvent the constitutional protection against self-incrimination: introducing evidence at trial that the defendant remained silent in the face of incriminating evidence would violate the Fifth Amendment, but describing what a defendant looked like in remaining silent would not. This distinction would undermine our well-established rule that the government may not use evidence of a defendant's post-arrest, post-*Miranda* silence at trial, for impeachment or during its case-in-chief, because such evidence penalizes the exercise of a constitutional right.

///

*United States v. Velarde-Gomez,* 269 F.3d 1023, 1032 (9th Cir. 2001) (en banc) (citing, *inter alia, Doyle* and *Miranda*).

Applying these principles here, the Court should preclude the government from introducing evidence at trial that, after receiving *Miranda* warnings, Mr. Hardeman ultimately declined to answer further questions about the alleged victim, and his demeanor in doing so.

## CONCLUSION

For the aforementioned reasons, the Court should exclude from trial the aspects of his custodial interviews by ICE agents in November 2008 addressed in this memorandum.

Dated: June 26, 2013

                                         Respectfully submitted,

                                         STEVEN G. KALAR
                                         Federal Public Defender

                                         /s/
                                         _____
                                         DANIEL P. BLANK
                                         Assistant Federal Public Defender