STEVEN G. KALAR
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Defendant HARDEMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 10-0859 RS |
| ) | |
| Plaintiff, ) | MOTION IN LIMINE TO ADMIT |
| ) | EVIDENCE OF ALLEGED VICTIM'S |
| v. ) | SIMILAR CLAIMS OF |
| ) | CONTEMPORANEOUS SEXUAL ABUSE |
| GARY HARDEMAN, ) | BY OTHERS |
| ) | |
| Defendant. ) | Honorable Richard Seeborg |
| _____ ) | July 10, 2013 |
| | 2:00 p.m. |

## INTRODUCTION

The alleged victim in this case has made highly doubtful claims of forcible rape by persons other than Mr. Hardeman that are contemporaneous with – and strikingly similar to – her claim against Mr. Hardeman.  The Court should permit the cross-examination of the alleged victim as to these claims notwithstanding Federal Rule of Evidence 412.  Exclusion of the evidence would violate Mr. Hardeman's constitutional rights, including the right to meaningful cross-examination, because the credibility of the alleged victim will be the key issue at trial and the other claims of sexual abuse are inextricably intertwined with those against Mr. Hardeman.

## BACKGROUND

The alleged victim claims that in December 2007 Mr. Hardeman forcibly raped her after finding her on the street in Mexico due to her being abandoned by her mother.  *See* Declaration of Daniel P. Blank (filed concurrently with this memorandum) [hereinafter "Blank Decl."] ¶ 2.

LIMINE TO ADMIT FALSE ACCUSATIONS

1   She also claimed that Mr. Hardeman called her by name and said he knew her mother even
2   though she did not remember ever meeting him before, and that he then kept her in his hotel
3   room for several days. *See id.* According to the alleged victim, in the first discrete incident of
4   this narrative, Mr. Hardeman exposed his near-naked body to her, and then touched her body,
5   but not her genitals. *See id.* In the second discrete incident, she claims that he proposed having
6   consensual sexual intercourse with her, but she refused, and nothing more happened. In the third
7   discrete incident, Mr. Hardeman supposedly suggested alternative sexual activity, but again she
8   refused, and again nothing more happened. In the final discrete incident, the alleged victim
9   claims that Mr. Hardeman took her to another location, specifically the U.S. Embassy. *See id.*
10  After repeatedly denying in numerous interviews by psychologists, caseworkers and government
11  agents that Mr. Hardeman ever had any actual sexual contact with her, the alleged victim
12  changed her story to say that in the final discrete incident, just prior to taking her to the U.S.
13  Embassy, Mr. Hardeman forcibly raped her. *See id.* No known forensic evidence or eyewitness
14  testimony supports the alleged victim's claim of forcible rape against Mr. Hardeman. *See id.*
15  Instead, substantial evidence suggests that the alleged victim has a history of serious mental
16  illness, characterized by delusions and an inability to distinguish fantasy from reality. *See id.*

17  Significantly, Mr. Hardeman is not the only person against whom the alleged victim has
18  made such claims of forcible rape in Mexico between December 2007 and June 2008. *See id.*
19  ¶ 3. Documents provided by the government in discovery and obtained by defense subpoena
20  show that the alleged victim in this case has also similarly claimed that, during that time period,
21  either "Juan" or "Carlos" or both:

22  • found her on the street in Mexico, after being abandoned by her mother;
23  • called her by name and claimed to know her mother, even though she did not
24    recall ever meeting him;
25  • kept her in a hotel room for several days;
26  • exposed his body to her and touched her body, but not her genitals;
27  • proposed consensual intercourse, but she refused and nothing more happened;
28  • suggested alternative sexual activity, but she refused and nothing more happened;

LIMINE TO ADMIT FALSE ACCUSATIONS        - 2 -

1 • and finally took her to another location and left her there.

2 *See id.* Likewise, after repeatedly denying in numerous interviews by psychologists,

3 caseworkers and law enforcement agents that "Juan" or "Carlos" ever had any actual sexual

4 contact with her, the alleged victim recently changed her story to say that just prior to taking her

5 to the next location, they each forcibly raped her. *See id.* "Juan" is supposed to have then put

6 her on a bus to the area in Mexico City where she was found by Mr. Hardeman. *See id.* After

7 "Carlos" supposedly left her at a grocery store, she was then turned over to the authorities, which

8 ultimately led to the current prosecution of Mr. Hardeman. *See id.*

9 As with Mr. Hardeman, no known forensic evidence or eyewitness testimony supports

10 the alleged victim's claims against the others. *See id.* During her numerous interviews

11 regarding Mr. Hardeman, the alleged victim also spoke extensively about "Juan" and "Carlos."

12 *See id.* As to each alleged perpetrator, the alleged victim's claims of sexual abuse over time

13 grew more dramatic and detailed in the context of her trying to seek emancipation from her

14 adoptive mother and in response to suggestions by people in authority from whom she was

15 seeking assistance. *See id.*

**ARGUMENT**

**I. RULE 412, EVEN IF APPLICABLE HERE, HAS PERTINENT EXCEPTION**

18 Mr. Hardeman seeks to cross examine the alleged victim as to her suspiciously similar

19 claims of contemporaneous forcible rape by persons other than Mr. Hardeman. On their face,

20 the exclusionary provisions of Rule 412 do not apply in this case because Mr. Hardeman's

21 purpose in seeking to introduce this evidence is not to prove that the alleged victim *actually*

22 engaged in other sexual behavior or to prove her *true* sexual predisposition, but rather to

23 impeach her credibility by showing a pattern of what appear to be *false* claims of sexual abuse

24 similar to and contemporaneous with her claim against Mr. Hardeman, based upon similar

25 motivations to lie. In any event, even if Rule 412 does apply here, there is a pertinent exception

26 to that rule which permits the introduction of the proposed evidence in this case.

27 Rule 412(a) provides that the "following evidence is not admissible in a civil or criminal

28 proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim

LIMINE TO ADMIT FALSE ACCUSATIONS        - 3 -

engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).  The purpose of the rule is to prevent a defendant from suggesting that a victim's prior sexual activity or predisposition makes it more likely that she consented to the sexual misconduct with which he is charged.  On its face, the terms of Rule 412(a) do not apply here.  Mr. Hardeman is not seeking to introduce any evidence of the alleged victim's actual sexual behavior or predisposition.  The theory of the defense is that, even if the alleged victim's prior claims of sexual abuse by others could be construed as "sexual behavior" by the alleged victim within the meaning of Rule 412(a), those claims are false, and no such behavior actually occurred.  It is the alleged victim's predisposition to make false claims, not her predisposition for sexual activity, that is at issue.  *See, e.g., Redmond v. Kingston,* 240 F.3d 590, 592 (7th Cir. 2001) ("A false charge of rape is not sexual conduct.").  Thus, the Court should hold that Rule 412 is no bar to cross-examination of the alleged victim regarding her suspiciously similar, contemporaneous claims of forcible rape by persons other Mr. Hardeman.

The government is expected to take the position that these additional claims by the alleged victim are in fact true, despite the lack of any corroborating evidence, and that they should therefore be excluded under the provisions of Rule 412.  However, even if Rule 412 did apply in this case, there is an express exception to that rule providing that "[t]he court may admit the following evidence in a criminal case: . . . (C) evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C).  For the reasons discussed below, the Court should admit the evidence.

**II.     EXCLUSION OF THE EVIDENCE WOULD VIOLATE HARDEMAN'S RIGHTS**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." U.S. Const. amend. VI.  The Supreme Court has held that incorporated within the right to confrontation are two types of protections for a criminal defendant: "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Richie*, 480 U.S. 39, 51 (1987) (citing *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985); *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (explaining that the main and essential purpose of confrontation is to secure the

LIMINE TO ADMIT FALSE ACCUSATIONS         - 4 -

opportunity of cross-examination). Here, the exclusion of Mr. Hardeman's proposed cross-examination of the alleged victim as to her highly questionable claims of sexual abuse by others – which are strikingly similar to and contemporaneous with her claim against Mr. Hardeman – would violate his constitutional right to confront the key witness against him.

The right to cross-examination "'includes the opportunity to show [not only] that a witness is biased, [but also] that the testimony is exaggerated or [otherwise] unbelievable.'" *Fowler v. Sacramento Cnty. Sheriff's Dept.,* 421 F.3d 1027, 1035 (9th Cir. 2005) (quoting *Ritchie,* 480 U.S. at 51-52). In addition, "cross-examination may implicate the Sixth Amendment even if it is not certain to affect the jury's assessment of the witness's reliability or credibility." *Id.* at 1036 (citing *Davis,* 415 U.S. at 317). Numerous courts have applied these principles to hold that it is error of constitutional magnitude to preclude a defendant from cross-examining the alleged victim about similar claims of sexual abuse by other persons where the credibility of the alleged victim is central to the prosecution's case, particularly where the theory of the defense is that the other claims are false and result from a similar motivation to make a false claim against the defendant.

For example, where as here there is significant reason to believe that the claim of other sexual abuse is false, and the credibility of the alleged victim is central to the case, courts have not hesitated to hold that the defendant has a constitutional right to cross examine on that topic. *See, e.g., Franklin v. Henry,* 122 F.3d 1270, 1273 (9th Cir. 1997), *rev'd on other grounds by Payton v. Wofford,* 299 F.3d 815 (9th Cir. 2002) (en banc), (reversing conviction for sexual abuse of a child where trial court precluded defendant from cross-examining alleged victim regarding questionable prior claim of similar sexual abuse by another person since she was "the only percipient witness" to the conduct charged against the defendant); *see also White v. Coplan,* 399 F.3d 18, 27 (1st Cir. 2005) (reversing conviction for aggravated sexual assault where trial court precluded defendant from cross-examining alleged victims regarding three past accusations of similar character, of which two were found to be "false to a reasonable probability" with a "resulting plausible inference of a motive to deceive that could infect the present testimony); *Redmond,* 240 F.3d at 592-93 (reversing conviction for statutory rape where trial court precluded

LIMINE TO ADMIT FALSE ACCUSATIONS         - 5 -

defendant from cross-examining the alleged victim concerning a prior false claim that she had been forcibly raped in order to show that she "would lie about a sexual assault in order to get attention, and thus had a motivation to accuse him falsely"); *Averilla v. Lopez,* 862 F. Supp.2d 987, 1007-08 (N.D. Cal. 2012) (reversing rape conviction where trial court precluded defendant from cross-examining the alleged victim concerning a prior false rape claim, since her testimony was central to the prosecution's case).

In particular, where as here the alleged prior incidents are close in time to the charged conduct, courts have held that the evidence is admissible, notwithstanding Rule 412. *See, e.g., United States v. Stamper,* 766 F. Supp. 1396, 1402 (W.D.N.C. 1991) (in prosecution for statutory rape, granting defendant's motion to admit evidence of alleged victim's previous allegations of sexual abuse by three other men, notwithstanding Rule 412, where the charged conduct and the prior incidents were separated by "just one year," and the facts of the case suggested a "contrived scheme of fabrication of the part of the complainant") (citing 124 Cong.Rec. H11,945, daily ed. Oct. 10, 1978 (statement of Rep. Mann, pertaining to Rule 412) ("In determining the admissibility of such evidence, the court will consider . . . the amount of time that lapsed between the alleged prior acts and the rape charged in the prosecution. The greater the lapse of time, of course, the less likely it is that such evidence will be admitted.")).

Even where the defendant cannot conclusively prove that the alleged victim's claim of other sexual abuse was false, and even where there may be some dissimilarities between the incidents, the Ninth Circuit has held that it is constitutional error to preclude cross-examination on the topic if the credibility of the alleged victim is central to the case. *See, e.g., Fowler,* 421 F.3d at 1039 (reversing conviction for molesting a minor since, "although the trial court concluded that there was no 'indication' that [the alleged victim] actually overreacted or lied in the prior incidents and the facts of the prior incidents were 'very dissimilar' from those here, in fact there can be no doubt that the precluded cross-examination sufficient bore on [the alleged victim's] reliability or credibility such that a jury might reasonably have questioned it"); *see also Holley v. Yarborough,* 568 F.3d 1091, 1099 (9th Cir. 2009) (reversing conviction for child sexual abuse where the defendant was precluded from cross-examining the alleged victim about

LIMINE TO ADMIT FALSE ACCUSATIONS          - 6 -

claims of prior sexual abuse by others, even though trial court found "no evidence of the falsity" of the alleged victim's claims and "significant dissimilarities" between the incidents, since "introduction of evidence that she had made prior claims of her own sexual appeal was clearly relevant to impeach" and defendant "did not need to show that the excluded statements were consciously or maliciously fabricated" in order for the admission of the evidence to be constitutionally required); *cf. Olden v. Kentucky,* 488 U.S. 227, 233 (1988) (reversing rape conviction where trial court precluded defendant from cross-examining alleged victim regarding her motive to falsely claim lack of consent in order to protect her current sexual relationship with her boyfriend since her testimony "was central, indeed crucial, to the prosecution's case").

Moreover, where as here the other claims of possible sexual abuse involved nonconsensual conduct rather than consensual conduct, the Ninth Circuit in *Fowler* explained that there could be no possible prejudice to the alleged victim in that case, Lara, from permitting the cross-examination, even if the claims were true:

> Other than as to her credibility, it is not clear how her testimony regarding the prior incidents would prejudice her at all. Although the prior incidents involve sexual conduct or, at least, alleged sexual conduct, Lara did not participate by choice. Any disgust or hostility the jurors might have felt would have been lodged not with Lara but with [her alleged attackers]. Indeed, if anything, the jurors would have been more likely to sympathize with Lara.

421 F.3d at 1040-41 (citing *LaJoie v. Thompson,* 217 F.3d 663, 673 (9th Cir. 2000)); *see also Holley,* 568 F.3d at 1100 (citing *Fowler* in holding that "[a]ny prejudice the jury might have developed as a result of [the] cross-examination would have been to discredit her claims due to her active sexual imagination, the very type of impeachment that Holley was entitled to engage in under the Confrontation Clause"). The *Fowler* court also dismissed the prosecution's claim that the cross-examination of the prior incidents would be unduly embarrassing to the alleged victim, noting that it was unclear how it "would be any more embarrassing than Lara's testimony regarding the alleged incident involving Fowler," and holding in any event that "[s]uch minimal – if any – embarrassment cannot serve as the basis to preclude relevant cross-examination." *Fowler,* 421 F.3d at 1041 (citing *Davis,* 415 U.S. at 319-20). *Fowler* also specifically rejected the government's claims of other countervailing interests against permitting the cross-

LIMINE TO ADMIT FALSE ACCUSATIONS     - 7 -

examination, explaining that it would not take "an inordinate amount of time" and would not be "confusing to the jury." *Id.* at 1040.

Even where there is substantial other evidence with which to impeach the alleged victim, courts have emphasized that cross-examination regarding other false claims of sexual abuse is not cumulative because it is qualitatively different from any other kind of impeachment. *See, e.g., Redmond,* 240 F.3d at 591 ("The evidence of the false charge of forcible rape was not cumulative of other evidence bearing on Heather's credibility, because none of the other evidence either involved a false charge of being sexually assaulted or furnished a motive for such a charge."); *see also Averilla,* 862 F. Supp.2d at 995 (noting that "federal Courts of Appeals have concluded that false prior allegations of sexual abuse are distinct from general credibility evidence, and therefore not cumulative") (citing *White* and *Redmond*).

It is also worth noting the practical difficulty in this particular case in excluding cross-examination of the alleged victim regarding her contemporaneous claims of similar sexual abuse by others because they are inextricably intertwined with her accusation against Mr. Hardeman. The alleged victim now claims that she was forcibly raped by "Juan" just a few hours before being encountered by Mr. Hardeman in Mexico in December 2007.  She also claims that she was forcibly raped by Carlos in Mexico in June 2008 before being taken into custody by the authorities who then commenced the current prosecution of Mr. Hardeman.  During her numerous interviews regarding her interaction with Mr. Hardeman, she also spoke at length about her claims against "Juan" and "Carlos."  Even her Grand Jury testimony in this case addressed these claims of sexual abuse by others.

Finally, Mr. Hardeman emphasizes that the evidence he seeks to introduce is limited to *cross-examination* of alleged victim regarding her prior claims of similar sexual abuse by others during the time period in question.  He is not seeking to introduce *extrinsic evidence* to prove up the falsity of those claims – such as testimony by other witnesses regarding the alleged facts of those other incidents – which would greatly expand the scope of the current trial.  This distinction between cross-examination and extrinsic evidence weighs significantly in favor of granting Mr. Hardeman's motion. *See, e.g., Nevada v. Jackson,* 133 S. Ct. 1990, 1994 (2013)

LIMINE TO ADMIT FALSE ACCUSATIONS         - 8 -

(distinguishing *Fowler, Holley* and *Olden*, which address *cross-examination,* by noting that "this Court has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes"); *see also White,* 399 F.3d at 26 ("We conclude that, on the present facts, White was entitled to explore the prior accusations on cross-examination.  White has narrowed his claim on appeal to cross-examination, and we are not endorsing any open-ended constitutional right to offer extrinsic evidence.  Such an excursion requires more witnesses and documents, and so greater risks of confusion and delay; to say that impeachment here would cast light on a motive to lie is not to suggest that prior false accusations are the kind of evidence for which extrinsic evidence has traditionally been admitted.").

## CONCLUSION

For the aforementioned reasons, the Court should grant Mr. Hardeman's motion to permit cross-examination of the alleged victim regarding her prior claims of sexual abuse by others in Mexico between December 2007 and June 2008.

Dated:  June 26, 2013

                                    Respectfully submitted,

                                    STEVEN G. KALAR
                                    Federal Public Defender

                                    /s/
                                  _____
                                    DANIEL P. BLANK
                                    Assistant Federal Public Defender