MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

OWEN P. MARTIKAN (CABN 177104)
Assistant United States Attorney

JANAKI GANDHI (CABN 272246)
Special Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7241
    FAX: (415) 436-7234
    owen.martikan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 10-0859 RS (NV) |
| Plaintiff, | |
| v. | [~~PROPOSED~~] ORDER DETAINING DEFENDANT GARY HARDEMAN |
| GARY HARDEMAN, | |
| Defendant. | |

## INTRODUCTION

This case came before the Court on June 26, 2013, for a hearing, held via video-conference, regarding the revocation of defendant Gary Hardeman's pre-trial release. Pursuant to a June 18, 2013, violation notice from Pre-Trial Services, the Court held an initial bail review hearing on June 20, 2013, and revoked Hardeman's bond, ordering him provisionally detained pending the June 26, 2013, hearing, so that the parties could discuss whether any condition or combination of conditions of release could ensure the safety of any person and the community. After hearing the arguments of the parties, reviewing the Violation Notice, and hearing the position of Pre-Trial Services, the Court orders Hardeman's bond and release order revoked and orders him detained pending the trial of this matter.

[~~PROPOSED~~] DETENTION ORDER
CR 10-0859 RS (NV)    1

## FACTUAL AND PROCEDURAL HISTORY

Defendant Gary Hardeman was charged by indictment on November 23, 2010, with violations of 18 U.S.C. § 2423(c) Engaging in Illicit Sexual Conduct in Foreign Places, and 18 U.S.C. § 2260A Penalties for Registered Sex Offenders. On December 29, 2010, this Court released Hardeman on a $250,000 bond, $50,000 of which was secured, to the custody of his parents, Russell and Anna Hardeman. Hardeman's parents also signed on as his sureties. Among other conditions, the bond order required that Hardeman stay at his parents' home on electronic monitoring, with permission to leave only for court appearances, meetings with his attorney, and mental health counseling.

The bond order was modified on October 4, 2011, to permit Hardeman to have visits in his home at the residence of his parents by the children of his brother, in the presence of at least one of the parents of those children. The bond order was modified on December 1, 2011, to allow Hardeman to have in his residence and to use a computer for purposes to be pre-approved by Pretrial Services, that is equipped with software that permits monitoring by Pretrial Services, and also to allow Hardeman to leave his home to exercise in a gymnasium to be approved by Pretrial Services for up to four hours per week. On May 4, 2012, the bond order was modified to permit Hardeman to leave his residence between 12:00pm and 4:00pm to take his mother on errands. On August 15, 2012, the bond order was modified after the death of Hardeman's father to remove him from the bond, and was further modified to remove Hardeman's mother as a custodian due to her failing health. Hardeman's mother remained on the bond as a surety.

On June 18, 2013, Pre-Trial Services provided the Court with a Violation Notice alleging that Hardeman had violated the terms of his bond order. That Violation Notice has since been provided to the parties, and the facts do not appear to be in dispute. According to the Violation Notice, Hardeman's counsel telephoned a Pre-Trial Services Officer on May 8, 2013, to discuss Hardeman's request that his significant other, Mariacarmen Arroyo, a Mexican national who resides in Mexico, be allowed to visit him from June 17, 2013, to June 28, 2013. Ms. Arroyo would be accompanied by her six-year-old son. The Pre-Trial Services officer told Hardeman's counsel to provide more information regarding the request before it would be considered.

On May 13, 2013, Hardeman informed Pre-Trial Services that Arroyo intended to travel from

Mexico to visit Hardeman with her six-year-old son and with her daughter by Hardeman, who is 25 years old. The visitors would stay in Hardeman's home throughout their visit, which would last from June 17, 2013, to June 28, 2013. Hardeman stated that he had been in a relationship with Ms. Arroyo since 1987, although her six-year-old son was by another man, and that he had not seen her for five years.

The Pre-Trial Services officer informed Hardeman that she objected to Hardeman's request, given Hardeman's risk factors and the nature of the pending prosecution. The Pre-Trial Services officer did inform Hardeman that she would reconsider her objection if Hardeman provided sufficient documentation that both parents of the six-year-old boy were aware of Hardeman's criminal record and pending charges, and nevertheless agreed to the visit. The Pre-Trial Services officer informed Hardeman that regardless of her opinion on this request, the Court would ultimately decide whether to approve it. Hardeman reported that he understood.

By June 13, 2013, Hardeman had not yet provided Pre-Trial Services with verification that the boy's father approved the boy's visit with Hardeman despite Hardeman's criminal history and the pending proceedings. Hardeman's counsel informed Pre-Trial Services that Hardeman was no longer pursuing the request given the imminent proposed arrival date. The Pre-Trial Services officer contacted Hardeman and advised him that he was not allowed to have contact with the six-year-old boy as the Court had not approved the contact, but that he could contact his counsel to arrange for a court hearing to seek such approval. Hardeman reported that he understood Pre-Trial Services' direction that he not have contact with anyone under the age of 18.

On June 14, 2013, the Pre-Trial Services officer spoke with Hardeman by phone. Hardeman reported that he had spoken with his attorney, and understood that he did not have permission to have contact with any minors under the age of 18 with the exception of his brother's children in the presence of his brother. Hardeman reported that Ms. Arroyo, her daughter, and her son would be in California on June 16, 2013, because he had already made travel arrangements for them, and that he would make alternate housing arrangements for the boy. The Pre-Trial Services officer directed Hardeman to provide her with information regarding where the boy would stay, and to do so before they arrived for the visit, via voicemail if necessary. Hardeman never provided this information to Pre-Trial Services.

[~~PROPOSED~~] DETENTION ORDER
CR 10-0859 RS (NV)                         3

On June 17, 2013, two Pre-Trial Services officers conducted surveillance on Hardeman. While Hardeman was away from his home between 12:00pm and 4:00pm, which Hardeman was allowed to do to take his mother on errands, the Pre-Trial Services officers saw Hardeman with a minor boy. Hardeman was not accompanied by his mother, and he did not appear to be running an errand for her, with the possible exception of grocery shopping. The Pre-Trial Services officers saw Hardeman leave his home with two adults and drive to his brother's house in Pacifica, California, where he picked up two other individuals, one of whom was the minor boy. Hardeman accompanied his apparent guests from Mexico in the community, making several stops, including a coffee shop, a shoe store, and a grocery store. The Pre-Trial Services officers believed that Hardeman was engaging in counter-surveillance tactics such as frequently checking his surroundings, not getting in or out of his vehicle at the same time as other passengers, and signaling a turn in one direction while driving, but then turning in another direction.

Pre-Trial Services later reported that Hardeman contacted his Pre-Trial Services officer, ostensibly to negotiate permission to have contact with the six-year-old boy, during the time when he was already in contact with the six-year-old boy.

**REASONS FOR DECISION**

The Bail Reform Act sets forth the sanctions for a violation of a condition of pre-trial release at 18 U.S.C. § 3148. The available sanctions are revocation of release, a detention order, and prosecution for contempt of court. 18 U.S.C. § 3148(a). The Court may initiate a proceeding for revocation of release, and shall enter an order for revocation of release and detention if, after a hearing, the Court finds either (1) clear and convincing evidence that the defendant has violated any condition of pre-trial release, or (2) probable cause that the defendant has committed a federal, state, or local crime while on pre-trial release, and either (1) that based on the factors set forth in Section 3142(g) of the Bail Reform Act, there is no condition or combination of conditions of release that will assure that the defendant will not flee or pose a danger to the safety of any other person or the community, or (2) that the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b).

In this case, the facts underlying Hardeman's violation are not in dispute. Hardeman's position is not that he did not violate the conditions of his pre-trial release, but that he should not be detained as a

result of that violation. Accordingly, the Court finds, by clear and convincing evidence, that Hardeman violated a condition of his pre-trial release when he had personal contact with a six-year-old boy without seeking permission from the Court or Pre-Trial Services, and despite being told by Pre-Trial Services that he did not have such permission.

The Court also finds that Hardeman is unlikely to abide by any condition or combination of conditions of pre-trial release. Hardeman's conversation with a Pre-Trial Services officer, in which he negotiates for permission to have personal contact with a six-year-old boy after he has already had personal contact with him, shows deceit and a willingness to avoid the restrictions of pre-trial release when it suits him. Given the current charges against Hardeman and his criminal history, the violation is not just technical, but central to Pre-Trial Services' function to ensure the safety of the community. Pre-Trial Services has informed the Court that it no longer trusts Hardeman to follow its directives while on pre-trial release, and that any condition or combination of conditions of release would have to be based on some degree of trust.

Hardeman has offered to revert to restrictions very similar to those that governed his release after his initial detention hearing in December 2010. Essentially, Hardeman proposes to remain at home on electronic monitoring, including GPS monitoring, with permission to leave home only for court appearances, visits with counsel, and perhaps counseling. The Court finds it unlikely that Hardeman would comply with these conditions. Unlike the original release order, Hardeman has no custodians. His father has passed away and his mother is too ill to watch over him. Pre-Trial Services has stated that given Hardeman's recent violation, it no longer trusts Hardeman to comply with release conditions, and that these conditions require a level of trust to be workable.

## CONCLUSION

For the foregoing reasons, the Court hereby revokes defendant Gary Hardeman's bond and orders him detained in the custody of the U.S. Marshals Service pending the trial of this matter.

SO ORDERED.

DATED: 6/28/13

HON. NANDOR VADAS
United States Magistrate Judge

[PROPOSED] DETENTION ORDER
CR 10-0859 RS (NV)                    5